643 P.2d 708

STATE of Arizona, Appellee,

v.

Anthony H. JOHNSON, aka Tony Johnson, Appellant.

No. 1 CA–CR 4524.

Court of Appeals of Arizona, Division 1, Department B.

May 19, 1981.

Rehearing Denied June 23, 1982.

Review Denied Feb. 16, 1982.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div., and Michael D. Jones, Asst. Atty. Gen., Phoenix, for appellee.

Alston, Edwards & Novak, P. C. by Gene R. Stratford, Phoenix, for appellant.

OPINION

HAIRE, Presiding Judge.

Anthony H. Johnson was charged by information with armed robbery, a class two, dangerous felony, in violation of A.R.S. §§ 13–1901, 13–1902 and 13–1904.[1] Prior to trial, defense counsel filed a motion to suppress certain statements given by Johnson shortly after his arrest as well as a rifle

1. References are to statutory designations under the new Arizona Criminal Code, effective October 1, 1978.

used in the robbery, located by police as a result of those statements. Following an evidentiary hearing and oral argument, the motion to suppress was denied. Johnson was found guilty as charged by a jury, and following entry of judgment of guilt was sentenced to a term of 14 years imprisonment.

■ We briefly restate the evidence adduced at the trial and at the hearing on the motion to suppress, bearing in mind that we must view the evidence in a light most favorable to sustaining a conviction and resolving all reasonable inferences in favor of the state. *State v. Acree*, 121 Ariz. 94, 588 P.2d 836 (1978). On the evening of November 2, 1978, Robert Charles Jones (victim) was drinking at the Alhambra Bar in Phoenix. At approximately 1:00 a. m. a woman summoned him outside by telling him that a friend of his, the appellant, wished to speak to him. As Jones left the bar, appellant told Jones that he intended to rob him. When Jones turned to go back inside the bar appellant grabbed a rifle that was leaning against the building and shot Jones in the leg. Appellant then put the rifle to Jones' head and removed approximately $761 from his pants pockets. Jones was able to identify appellant as his assailant to police officers.

Six days after the incident, Detective Davis of the Phoenix Police Department received an anonymous phone call from an unidentified male caller advising that the suspect (appellant) was then at a particular apartment in Phoenix and was getting ready to leave town. About two hours later Detective Davis and two uniformed officers arrived at the apartment, knocked on the door and were greeted by one James Stokes. Detective Davis testified that the following then occurred:

"I—first of all, I asked Mr. Stokes was he the—did he live there, he said, 'No.'"

"I said, 'Well, who does?' And he said—I think he said Hazel Magee.

"And I asked him, 'Is she home?' He said, 'No, she's gone, I'm staying here until she comes back.'

"And then I asked him, 'Are you the only one in the house?' He said, 'I don't know, I just got here. I don't know.'

"Then I told him that I'm looking for a man named Anthony Johnson. He said, 'I don't know if he's here or not.' I asked him, 'Well, could I take a look around?' He said, 'I don't care.'"

Detective Davis knew appellant by sight. He entered the apartment to look for him, and located him in a bedroom hiding behind a closet door. Appellant was arrested and taken to the police station. Approximately ten to fifteen minutes later he confessed to shooting the victim in the leg, but he claimed that he took no money from the victim. He stated that the shooting resulted from an argument concerning a small sum of money owed by Jones to appellant. Appellant also told the police where they could locate the weapon used in the shooting. The weapon was located and later admitted into evidence at trial. Further facts will be set forth as they are pertinent to issues raised in this appeal.

Appellant first contends that the trial court erred in denying the motion to suppress all evidence concerning the statements to police and the weapon. He urges that this evidence resulted from an illegal search of the apartment in which he was arrested. At the motion to suppress hearing, counsel stipulated that Hazel Magee, the actual lessee of the apartment at the time in question, would testify that appellant had permission to be in her apartment and had been there for five to six hours prior to his arrest. He did not have a key to the apartment, and none of his clothing was there. He and Stokes had her permission to be on the premises at the time of the search. Appellant visited the apartment approximately once a month and did not reside there. She had left the apartment approximately 20 minutes before the police came, and she, Mr. Stokes and appellant had all been in the apartment together at that time.

This is clearly not a situation in which the police entered appellant's own home in order to arrest him. Rather it is a situation

in which one guest gave consent for a search which led to the arrest of another guest in an apartment belonging to a third person. Both briefs before this court have devoted considerable attention to the question of whether appellant has standing to raise a Fourth Amendment issue. We realize that the United States Supreme Court has semantically, at least, done away with the concept of standing in *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). The Supreme Court found no necessity for continued adherence to the notion of "standing" as a concept that is theoretically distinct from the merits of a defendant's Fourth Amendment claim. As the court said:

"[W]e think the better analysis forthrightly focuses on the extent of a particular defendant's rights under the Fourth Amendment, rather than on any theoretically separate, but invariably intertwined concept of standing.

\*   \*   \*   \*   \*   \*

"Analyzed in these terms, the question is whether the challenged search or seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained during it. That inquiry in turn requires a determination of whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect. We are under no illusion that by dispensing with the rubric of standing ... we have rendered any simpler the determination of whether the proponent of a motion to suppress is entitled to contest the legality of a search and seizure. But by frankly recognizing that this aspect of the analysis belongs more properly under the heading of substantive Fourth Amendment doctrine than under the heading of standing, we think the decision of this issue will rest on sounder logical footing." 439 U.S. at 139–40, 99 S.Ct. at 428–29, 58 L.Ed.2d 398–99.

Under *Rakas, supra,* the inquiry depends on whether the disputed search and seizure has infringed upon an interest of a defendant entitled to the protection of the Fourth Amendment. This in turn, is dependent upon whether the defendant claiming the protection has a "legitimate expectation of privacy" in the place searched. A "legitimate" expectation of privacy is not synonymous with a subjective expectation of not being discovered. Rather, the legitimacy of the expectation must be determined "by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Rakas,* footnote 12, 439 U.S. at 143, 99 S.Ct. at 430, 58 L.Ed.2d at 401.

However, *Rakas* makes clear that this determination cannot be based solely on property law concepts. *See Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Nor does the test of *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, 78 A.L.R.2d 233 (1960), i.e., whether appellant was "legitimately on the premises", retain viability as the sole test. *Rakas v. Illinois, supra.* Rather, we must look to the totality of the circumstances to determine whether appellant had a "legitimate expectation of privacy".

▮ From the facts of this case, it appears that appellant was a mere guest and had no interest in the apartment. He did not reside there, even temporarily. He had no key, and none of his personal effects were located there. He was simply legitimately on the premises, as was another guest, Stokes, who consented to the search of the apartment. Whatever may have been Hazel Magee's "legitimate expectation of privacy" in her own apartment, Fourth Amendment rights are personal rights which may not be vicariously asserted; they may be enforced only by the exclusion of evidence at the instance of one whose own protection was infringed by the search and seizure. *Brown v. United States,* 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); *Alderman v. United States,* 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Based on the totali-

ty of the circumstances presented herein, we find that the search of the apartment by the police did not infringe any "legitimate expectation of privacy" of appellant. We find no error in the trial court's denial of the motion to suppress.

Appellant's second contention on appeal concerns alleged error by the trial court in precluding the defense from arguing, for impeachment purposes, the victim's prior misdemeanor conviction during closing arguments, even though evidence of such conviction had been introduced at trial. Before the start of trial, the defense had filed a motion to preclude the state from using appellant's prior felony assault conviction to impeach his testimony. Alternatively, the motion urged that if such conviction were deemed to be admissible for impeachment, then the defense should be allowed to impeach the victim by showing the victim's prior misdemeanor conviction for conspiracy to commit burglary. The court denied appellant's motion concerning the appellant's prior felony conviction and indicated that the state would be allowed to use that prior conviction for impeachment purposes. However, the court then entered into a balancing test, and out of a sense of "fairness" stated that it would allow the defense to question the victim concerning his prior misdemeanor conviction.

During direct examination of the victim at trial, the state attempted to "draw the sting" and asked the victim if he had ever before been convicted of a misdemeanor. The victim admitted the conviction but could not recall the details of the crime. Because of this lapse, both sides stipulated that the jury would later be informed of the nature of the crime. The appellant never took the stand to testify in his own behalf. Therefore, at the close of evidence, the state moved to prevent the defense from making any argument to the jury concerning the victim's prior misdemeanor conviction, on the grounds that, since appellant had not taken the stand, the basis for allowing the victim's prior misdemeanor into evidence no longer existed. The court granted the state's motion and precluded the defense counsel from arguing the vic-

tim's prior conviction to the jury, and refused to allow the stipulation as to the nature of the misdemeanor offense to be read by the jury.

█ We hold that the trial court erred by initially allowing testimony concerning the misdemeanor conviction. Rule 609, Arizona Rules of Evidence, 17A A.R.S., provides as follows:

"Impeachment by Evidence of Conviction of Crime

"(a) General rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record, if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect, and if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted or (2) involved dishonesty or false statement, regardless of the punishment."

The rule does not authorize a balancing test such as that employed by the trial judge. Moreover, the victim's misdemeanor conviction for conspiracy to commit burglary did not involve "dishonesty or false statement" as required to allow proof of conviction for a misdemeanor. Our Rules of Evidence are adopted from the Federal Rules of Evidence, and, therefore, in the absence of Arizona precedent as a guide to interpretation of our rules, we will look to the federal courts which have interpreted the Federal Rules of Evidence. The Ninth Circuit has considered what types of crimes involve "dishonesty or false statement" under Federal Rule 609(a), which is in that aspect the same as Arizona's rule. In *United States v. Ortega*, 561 F.2d 803 (9th Cir. 1977), the Ninth Circuit held that a misdemeanor shoplifting conviction did not qualify as an offense involving "dishonesty or false statement". In interpreting the phrase "dishonesty or false statement" the court looked to a conference committee of the House and Senate which had explained its view on Rule 609 as follows:

"The Conference Committee explained its views in its joint statement which, in pertinent part, says:

'By the phrase "dishonesty and false statement" the Conference means crimes such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of *crimen falsi*, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully.

\* \* \* \* \* \*

'Human experience does not justify an inference that a person will perjure himself from proof that he was guilty of petty shoplifting.... An absence of respect for the property of others is an undesirable character trait, but it is not an indicium of a propensity toward testimonial dishonesty.'" 561 F.2d at 806.

Since the victim's prior misdemeanor conviction should not have been allowed for impeachment, we find that any error of the trial court was in appellant's favor. Nor do we find any waiver by the prosecution of its right to object to the argument of such evidence to the jury. At its earliest opportunity, when it was apparent that appellant would not be testifying, the state requested that the misdemeanor conviction not be presented again to the jury. The initial presentation of such evidence by impeachment of its own witness was a result of the court's prior erroneous ruling. We find no reversible error.

Having found no reversible error, the judgment of conviction and the sentence are affirmed.

JACOBSON and EUBANK, JJ., concur.