IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | |
| | ) | 2 CA-CR 2011-0076 |
| Appellee, | ) | DEPARTMENT A |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| XAVIER HIPOLITO ESTRELLA, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF COCHISE COUNTY

Cause No. CR201000122

Honorable Ann R. Littrell, Judge

AFFIRMED IN PART; VACATED IN PART AND REMANDED

Thomas C. Horne, Arizona Attorney General
  By Kent E. Cattani, Joseph T. Maziarz, and                                Tucson
  Diane Leigh Hunt                                            Attorneys for Appellee

Joel A. Larson, Cochise County Legal Defender                               Bisbee
                                                            Attorneys for Appellant

B R A M M E R, Judge.

**¶1**        Xavier Hipolito Estrella appeals from his convictions and sentences for transportation of marijuana for sale, possession of marijuana for sale, and possession of

marijuana. He argues the trial court erred in denying his motion to suppress evidence obtained from a search following the warrantless placement of a tracking device on his employer's van and the resulting stop of the van while Estrella was driving it. Although we vacate his convictions and sentences for possession of marijuana for sale and possession of marijuana, we affirm in all other respects.

## Factual and Procedural Background

¶2 "In reviewing the grant of a motion to suppress, we view the evidence presented at the evidentiary hearing and any reasonable inferences from that evidence, in the light most favorable to upholding the trial court's order." *State v. Garcia-Navarro*, 224 Ariz. 38, ¶ 2, 226 P.3d 407, 408 (App. 2010). In July 2009, Drug Enforcement Administration special agent Wiel, despite not having obtained a search warrant, placed a global positioning system (GPS) tracking device on a van owned by Estrella's employer, Sierra Vista Glass company, because he had been given information the van might be used to transport illegal drugs from Sierra Vista to Tucson. Wiel attached the device while the van was parked in a public parking lot.

¶3 Agents remotely monitored data the device transmitted every hour regarding the van's movements and location, although the van did not move during the few days immediately after the device had been placed on it. Agents used physical surveillance to confirm the van remained in the parking lot. Agents subsequently noticed that information transmitted from the device showed the van traveling north from Sierra Vista. They then established physical surveillance of the van in Tucson. Agents

2

monitoring the van contacted Arizona Department of Public Safety Officer Galarneau and informed him the van might be transporting marijuana. Galarneau located the van, which Estrella was driving, and stopped it for speeding and having excessive window tint. Galarneau discovered Estrella had an outstanding warrant and arrested him; a subsequent search of the van revealed it contained bundles of marijuana.

¶4 Estrella was indicted on one count of transportation of marijuana for sale, over two pounds; one count of possession of marijuana for sale, over four pounds; and one count of possession of marijuana, over four pounds. He moved to suppress evidence derived from the search of the van, alleging the warrantless placement of the GPS device on the van and collection of data it transmitted violated his Fourth Amendment rights. After an evidentiary hearing, the trial court denied the motion to suppress. A jury convicted Estrella on each count, and the court sentenced him as a repetitive offender to concurrent, presumptive prison terms, the longest of which was 9.25 years. This appeal followed.

## Discussion

¶5 Estrella argues the trial court erred in denying his motion to suppress evidence obtained following the warrantless placement of the GPS tracking device on his employer's van and the agents' use of data from that device to track the van's movements. "In reviewing a trial court's ruling on a motion to suppress, we defer to the trial court with respect to the factual determinations it made but review the court's legal conclusions de novo." *State v. Olm*, 223 Ariz. 429, ¶ 7, 224 P.3d 245, 248 (App. 2010).

3

*United States v. Jones*

¶6        Estrella relies on the Supreme Court's recent decision in *United States v. Jones*, ___ U.S. ___, 132 S. Ct. 945 (2012).  That case addressed whether attaching a GPS tracking device to the defendant's vehicle and then using the device to monitor the vehicle's movements constituted a search under the Fourth Amendment, ultimately concluding it did.  *Id.* at ___, 132 S. Ct. at 949.  The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated," and the Court in *Jones* noted a motor vehicle is indisputably an "effect" under the Amendment.  *Id.*  The Court concluded the government had "physically occupied private property for the purpose of obtaining information" and that "such a physical intrusion" would have been a "search" when the Fourth Amendment was adopted.  *Id.*

¶7        Because the Fourth Amendment's text "reflects its close connection to property," early Fourth Amendment jurisprudence was tied to common-law trespass until later cases deviated from an exclusively property-based approach, ultimately adopting the "reasonable expectation of privacy" test articulated in Justice Harlan's concurrence in *Katz v. United States*, 389 U.S. 347, 360 (1967).  *Jones*, ___ U.S. at ___, 132 S. Ct. at 949-50.  But the Court in *Jones* stated "the *Katz* reasonable-expectation-of-privacy test has been added to, not substituted for, the common-law trespassory test."  *Id.* at ___, 132 S. Ct. at 952.  Consequently, the Court concluded either a trespass or an invasion of

4

privacy, in combination with "an attempt to find something or to obtain information," constitutes a search under the Fourth Amendment. *Id.* at ___ n.5, 132 S. Ct. at 951 n.5.

**¶8** The Fourth Amendment common-law trespass approach in *Jones* requires a trespass on one's own personal "effects." *Id.* at ___, 132 S. Ct. at 949, 953. In *Jones*, the defendant was the exclusive driver of a vehicle registered to his wife, and the government did not challenge the Court of Appeals's conclusion that the vehicle's registration did not affect whether the defendant could make a Fourth Amendment-based objection. *Id.* at ___ n.2, 132 S. Ct. at 949 n.2. Thus the Supreme Court, concluding that if Jones was not the owner "he had at least the property rights of a bailee," nonetheless declined to consider further "the Fourth Amendment significance of Jones's status." *Id.* And the majority opinion emphasized Jones had "possessed the [vehicle] at the time the Government trespassorily inserted the information-gathering device"—distinguishing him from someone who takes possession of property upon which a device already has been installed. *Id.* at ___, 132 S. Ct. at 952 (distinguishing *United States v. Karo*, 468 U.S. 705 (1984)).

**¶9** Estrella argues on appeal that the placement and use of the GPS device constituted a search under the common-law trespass theory set forth in *Jones*. But he failed to assert that theory below. Therefore, that claim is subject only to review for fundamental, prejudicial error. *See State v. Henderson*, 210 Ariz. 561, ¶¶ 19-20, 115 P.3d 601, 607 (2005). Estrella has not argued any error constitutes fundamental error and thus the argument is waived. *See State v. Moreno-Medrano*, 218 Ariz. 349, ¶ 17, 185

5

P.3d 135, 140 (App. 2008) (fundamental error argument waived on appeal if not argued).[1] Consequently, we do not address further whether the use of the GPS device was a search under a trespass theory.

**Reasonable expectation of privacy**

¶10 Although we conclude Estrella has forfeited any appellate challenge to the GPS device on a trespass theory, we address whether Estrella can challenge the placement and use of the device pursuant to *Katz*, 389 U.S. 347. *See Jones*, ___ U.S. at ___, 132 S. Ct. at 952 (*Katz*'s reasonable-expectation-of-privacy test augments trespass test). Even in the absence of a trespass, "a Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." *Kyllo v. United States*, 533 U.S. 27, 33 (2001); *see also Katz*, 389 U.S. at 361 (Harlan, J., concurring). However, a search does not occur unless an individual exhibits an expectation of privacy and "'society [is] willing to recognize that expectation as reasonable.'" *Kyllo*, 533 U.S at 33, *quoting California v. Ciraolo*, 476 U.S. 207, 211 (1986) (alteration in *Kyllo*).

---

[1]Enforcement of our waiver standards is especially appropriate in the context of a motion to suppress because in such cases we are limited to the record presented at the hearing on that motion. *See State v. Newell*, 212 Ariz. 389, ¶ 22, 132 P.3d 833, 840 (2006). In the absence of any trespass-based claim raised in the trial court, our record is wholly inadequate to determine whether Estrella enjoyed any cognizable property interest in the vehicle upon which the GPS monitor was placed. Although the record indicates Estrella was an employee of the business that owned the vehicle, no evidence was presented that would allow us to conclude he had secured consent, either express or implied, to use the vehicle for the excursion in question.

¶11        Estrella has failed to demonstrate that any expectation he may have had was one society would deem reasonable. *See Hudson v. Palmer*, 468 U.S. 517, 525 n.7 (1984) (Supreme Court consistently emphasizes objective requirement). He contends the driver of a borrowed vehicle has an objectively reasonable expectation of privacy "regarding its contents," relying on *State v. Acosta*, 166 Ariz. 254, 255-56, 801 P.2d 489, 490-91 (App. 1990) (driver had standing to challenge car search revealing cocaine). However, the issue in this case is not whether Estrella had a reasonable expectation of privacy regarding the contents of the van—the alleged violation did not occur either during his detainment or the search of the van's interior. Rather, Estrella challenges the placement of the GPS device on the van's exterior and law enforcement's subsequent monitoring of the data the device transmitted. This is a much different inquiry, especially because the remote electronic monitoring of a vehicle's movement on a public road is considerably less intrusive than a physical search of the vehicle's interior that may result in the seizure of some of its contents. *Cf. United States v. Place*, 462 U.S. 696, 707 (1983) (dog "sniff" not search; less intrusive than opening luggage); *United States v. Knotts*, 460 U.S. 276, 285 (1983) (tracking beeper not search in part because no information revealed not visible otherwise to naked eye).

¶12        Estrella provided no evidence he had permission to drive the van or otherwise had any interest in it when the device was attached to the vehicle in a public parking lot. Nonetheless, he emphasizes that he had a reasonable expectation of privacy as to his personal movements. However, generally "[a] person travelling in an

7

automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." *Knotts*, 460 U.S. at 281. This is true particularly where the government's monitoring is short-term, *see Jones*, ___ U.S. at ___, 132 S. Ct. at 964 (Alito, J., concurring in judgment) (short-term monitoring of person's movements in public "accords with expectations of privacy that our society has recognized as reasonable"), and where the driver has borrowed another's vehicle without any knowledge of whether it is being tracked by a GPS device. From the reasonable borrower's perspective, it is entirely possible the owner has permitted the installation of such a device. *Cf. id.* at ___, 132 S. Ct. at 952 (majority opinion) (person accepting container with beeper not entitled to object to its presence even though used to monitor location).

¶13        Our dissenting colleague states that the United States Supreme Court has not addressed squarely "whether the state's use of a GPS monitor to remotely track a person constitutes a search in the absence of a trespass." However, the test for whether a search has occurred is whether a person has a reasonable expectation of privacy in the "objects, activities, or statements" he intends to keep private, *see Katz*, 389 U.S. at 361 (Harlan, J., concurring), not whether a person reasonably expects a particular method will be used to discover the information. Focusing on the method of surveillance, the dissent distinguishes *Knotts* by noting that it concerned the use of a radio beeper incapable of remote tracking. Although the technology used in this case is factually distinguishable, the "activity" or interest at stake—a person's expectation of privacy in his location while

8

traveling on public roads—indeed was addressed squarely in *Knotts*, with the Court determining that a person has "no reasonable expectation of privacy in his movements" on public roads. 460 U.S. at 281; *see also Katz*, 389 U.S. at 361 (Harlan, J., concurring) ("objects, activities, or statements . . . expose[d] to the 'plain view' of outsiders" not protected). Whether or not technological advances will cause the United States Supreme Court to qualify or retreat from that conclusion in the future cannot control the outcome in this case.[2] *See State v. Ring*, 204 Ariz. 534, ¶ 61, 65 P.3d 915, 938 (2003) (lower court must leave Supreme Court to overrule its own decisions).

¶14        Estrella expresses a concern echoed by the dissent that even short-term GPS monitoring may violate a person's expectation of privacy. He refers to Justice Sotomayor's concurrence in *Jones*, ___ U.S. at ___, 132 S. Ct. at 955, which noted GPS monitoring may provide a "comprehensive record of a person's public movements that reflects a wealth of detail about her familial, political, professional, religious, and sexual associations." But here, the use of the GPS device was much more limited. Agents, upon reasonable suspicion the van was to be used to transport drugs, installed and used the device to monitor the van's location and to initiate physical surveillance once it had

---

[2]Our dissenting colleague makes some cogent and important observations about technology and privacy. But despite the dissent's suggestion *Knotts* has been qualified by *Jones*, we observe instead that five Justices in *Jones* explicitly declined to decide whether the defendant had a reasonable expectation of privacy. *Jones*, ___ U.S. at ___, 132 S. Ct. at 950 (declining to address because trespass analysis dispositive); *Jones* ___ U.S. at ___, 132 S. Ct. at 957 (Sotomayor, J., concurring) (same). Until the United States Supreme Court makes a definitive statement on the issue, we have no basis for departing from *Knotts*.

arrived in Tucson. Estrella has provided no evidence disputing the trial court's finding that the length of time the van was tracked was "not excessive or unreasonable." Because we conclude the use of the GPS device here did not constitute a search as to Estrella, we need not determine whether the warrantless but minimally-intrusive use of GPS tracking for the period of time involved here is reasonable and permissible when based on reasonable suspicion. *See State v. Superior Court*, 149 Ariz. 269, 274, 718 P.2d 171, 176 (1986) (whether warrantless search supported by reasonable suspicion permissible depends on balance of governmental interest and extent of intrusion). And because it is not presented, we do not address the hypothetical situation Justice Sotomayor's observation suggests, in which GPS tracking is used to aggregate large amounts of personal data for a much longer period of time, or on a purely arbitrary basis. The determination of whether that type of surveillance may intrude on a person's reasonable expectations of privacy, and accordingly run afoul of constitutional standards, must wait until the issue is presented.

¶15        For these reasons, Estrella has not shown he had a reasonable expectation of privacy regarding either the van or its movements.[3] Therefore, the trial court did not err in denying his motion to suppress.

---

[3]This inquiry also disposes of the state's argument regarding "standing." *See State v. Johnson*, 132 Ariz. 5, 7, 643 P.2d 708, 710 (App. 1981) (we reach substantive issue of privacy expectations rather than addressing Fourth Amendment "standing" as distinct concept).

**Lesser-included offenses**

¶16    The state acknowledges Estrella's convictions and sentences for counts two and three of the indictment should be vacated because they are lesser-included offenses of his conviction for count one. We agree. Count one alleged Estrella knowingly had transported marijuana weighing more than two pounds for sale. Count two alleged Estrella knowingly had possessed marijuana for sale, having a weight of more than four pounds. Count three alleged Estrella knowingly had possessed marijuana. Estrella was convicted and sentenced on all counts.[4]

¶17    "A lesser-included offense is one that contains all but one of the elements of the greater offense." *Peak v. Acuna*, 203 Ariz. 83, ¶ 5, 50 P.3d 833, 834 (2002). The state may charge both lesser-included and greater offenses, *Merlina v. Jejna*, 208 Ariz. 1, ¶ 19, 90 P.3d 202, 206 (App. 2004), but a defendant may not be convicted for both, *State v. Welch*, 198 Ariz. 554, ¶ 13, 12 P.3d 229, 232 (App. 2000). In this case, counts two and three were lesser-included offenses of count one. *See State v. Cheramie*, 218 Ariz. 447, ¶¶ 11-12, 22, 189 P.3d 374, 376, 378 (2008) (possession and possession for sale lesser-included offenses of transportation for sale). To cure the error, we vacate Estrella's

---

[4]The trial court's sentencing minute entry erroneously states Estrella was sentenced to terms of 9.25 years for two counts of knowingly possessing marijuana for sale. However, the sentencing transcript indicates clearly that one of those sentences was for count one—knowingly transporting marijuana for sale, having a weight of more than two pounds. A court's oral pronouncement of sentence controls over the written minute entry in the event of a conflict. *State v. Whitney*, 159 Ariz. 476, 487, 768 P.2d 638, 649 (1989).

11

convictions and sentences for counts two and three. *See Welch*, 198 Ariz. 554, ¶ 13, 12 P.3d at 232.

**Disposition**

**¶18**  We vacate Estrella's convictions and sentences on counts two and three of the indictment. We also direct the trial court to amend the sentencing minute entry to reflect that the remaining 9.25-year sentence was for his conviction on count one, transportation for sale. In all other respects, we affirm.

/s/ *J. William Brammer, Jr.*

J. WILLIAM BRAMMER, JR., Judge

CONCURRING:

/s/ *Joseph W. Howard*

JOSEPH W. HOWARD, Chief Judge

E C K E R S T R O M, Presiding Judge, dissenting.

**¶19**  I fully agree with my colleagues' conclusion that Estrella has forfeited his argument that the placement of a GPS tracking device on the vehicle he drove from Sierra Vista to Tucson constituted a trespass and therefore a search under the analysis the United States Supreme Court adopted in *Jones*. And, because Estrella made no such argument to the trial court, he presented no evidence that he had any interest in the vehicle that would have provided him standing to complain about a trespass upon it.

12

¶20     I write separately, however, because I would conclude that the remote, electronic, non-consensual tracking of a person's movements with a GPS monitor intrudes upon a person's reasonable expectation of privacy. For this reason, the state's electronic tracking of Estrella must be characterized as a search, triggering the traditional protections of the Fourth Amendment.

¶21     Neither the United States Supreme Court nor any Arizona appellate court has squarely addressed whether the state's use of a GPS monitor to remotely track a person constitutes a search in the absence of a trespass. *See Jones*, ___ U.S. at ___, 132 S. Ct. at 953-54 (majority declining to address whether electronic tracking without accompanying trespass would constitute search); *Knotts*, 460 U.S. at 285 (concluding that use of radio beeper, not itself capable of remote tracking but attached to assist visual tracking, not search). However, as my colleagues correctly acknowledge, the Court has adopted, and repeatedly applied, an analytical framework for determining whether a particular investigative act constitutes a search cognizable under Fourth Amendment standards. Such a search occurs "when the government violates a subjective expectation of privacy that society recognizes as reasonable." *Kyllo*, 533 U.S. at 33; *see also Katz*, 389 U.S. at 361 (Harlan, J., concurring).

¶22     Citing *Knotts*, the majority ultimately concludes that Estrella had no reasonable expectation of privacy in his movements on Arizona's roads and highways because those movements occurred in public view. *See Knotts*, 460 U.S. at 285 (reasoning that use of beeper to assist visual surveillance not search because no

information revealed that was not visible to naked eye).  Indeed, as the Supreme Court has made clear in *Katz*, whether an expectation of privacy is reasonable turns in part upon "whether that expectation relates to information that has been 'expose[d] to the public.'" *United States v. Maynard*, 615 F.3d 544, 558 (D.C. Cir. 2010), *quoting Katz*, 389 U.S. at 351 (alteration in *Maynard*).

¶23     However, that some of our actions may occur in hypothetical public view does not always resolve the question of whether those actions are "exposed to the public" as that phrase has been understood in our jurisprudence.  Societal notions of privacy are complex and vary according to context.  *See O'Connor v. Ortega*, 480 U.S. 709, 715 (1987) (plurality opinion) ("We have no talisman that determines in all cases those privacy expectations that society is prepared to accept as reasonable.").  As one federal circuit has correctly observed, we anchor our expectations of privacy not in what other people could lawfully perceive but rather in what we reasonably expect another person, following conventional social norms, to perceive.  *See Maynard*, 615 F.3d at 559 (citing string of United States Supreme Court cases to support proposition that, in evaluating privacy expectations, "we ask not what another person can physically and may lawfully do but rather what a reasonable person expects another might actually do").  Justice O'Connor underscored this very feature of privacy when she joined the plurality in rejecting a marijuana grower's claim to privacy from airborne observation and stated:

> Ciraolo's expectation of privacy was unreasonable not because the airplane was operating where it had a "right to be," but because public air travel at 1,000 feet is a sufficiently routine part of modern life that it is unreasonable for persons

14

> on the ground to expect that their curtilage will not be observed from the air at that altitude.

*Florida v. Riley*, 488 U.S. 445, 453-55 (1989) (O'Connor, J., concurring) (discussing Court's prior reasoning in *California v. Ciraolo*, 476 U.S. 207, 212 (1986); *see also Bond v. United States*, 529 U.S. 334, 338-39 (2000) (passenger expects baggage will be handled but does not expect others will "feel the bag in an exploratory manner").

¶24       For example, we expose traditionally private parts of ourselves to public view when changing or showering in the locker room at the local fitness center. But well-understood conventions of social behavior assure that we do not focus on each other as we do so. We thus retain some expectation of privacy that society accepts as reasonable as to private moments even in a public setting. Indeed, we would consider it a marked breach of our privacy were any stranger to stare at us as we changed or showered—and we would consider it a greater breach yet if someone were to electronically document that process.

¶25       Applying that principle here, Estrella might reasonably expect to episodically and fleetingly encounter many fellow travelers on his journey between his employer's parking lot in Sierra Vista and the location of his arrest in Tucson. However, he would not reasonably expect any of those persons to follow him the entirety of the trip or exhibit any focus on his path or destination. Thus, although Estrella may not claim any privacy interest at any specific moment in his journey, he retains a reasonable expectation that the sum total of his journey would remain private from comprehensive

15

tracking. *See Maynard*, 615 F.3d at 563 (making similar observation about more prolonged tracking of a vehicle).[5]

¶26 This aspect of privacy we have traditionally enjoyed in our movements, whether by vehicle or foot, is not trivial. "[Even short-term] GPS monitoring generates a precise, comprehensive record of a person's public movements that reflects a wealth of detail about her familial, political, professional, religious, and sexual associations." *Jones*,___ U.S. at ___, 132 S. Ct. at 955 (Sotomayor, J., concurring). As Judge Kozinski of the Ninth Circuit Court of Appeals has pointedly observed:

> [W]here we go says much about who we are. Are Winston and Julia's cell phones together near a hotel a bit too often? Was Syme's OnStar near an STD clinic? Were Jones, Aaronson and Rutherford at that protest outside the White House? The FBI need no longer deploy agents to infiltrate groups it considers subversive; it can figure out where the groups hold meetings and ask the phone company for a list of cell phones near those locations.

*United States v. Pineda-Moreno*, 617 F.3d 1120, 1125 (9th Cir. 2010) (Kozinski, C.J., dissenting).

---

[5]The majority analysis suggests that Estrella's use of his employer's vehicle might affect whether he possessed a reasonable expectation of privacy in the specific journey here. This is not a trivial point. Just as persons may waive a reasonable expectation of privacy in their homes by taking actions in front of an open window exposed to the public, there are many specific contexts wherein we might forego our usual expectation of privacy in our movements. For example, many jobs require mobile employees to keep their employers advised of their whereabouts at all times. Those employees would have no reasonable expectation of privacy in their movements during work hours. But the facts in the record before us do not provide us with sufficient information to determine the conditions under which Estrella was entitled to use the vehicle here and whether those conditions could be viewed as a waiver of his presumptive expectation of privacy in his movements.

¶27     I suspect that it is not only Justice Sotomayor and Judge Kozinski who recognize this expectation of privacy. If told that a stranger had been, without our knowledge, electronically tracking our movements, few of us would deny feeling some invasion had occurred. I also suspect that most Americans would consider such non-consensual tracking to be an intrusion regardless of whether the tracking had (1) occurred for thirty days or thirty minutes, (2) followed only their movements in hypothetical public view, or (3) coincidentally disclosed any especially private event in their lives.

¶28     Indeed, this expectation of privacy has been acknowledged and protected in our laws. Many states, including California, Utah, Minnesota, Pennsylvania, and Florida have enacted statutes imposing civil and criminal penalties for the non-consensual use of electronic tracking devices. *See Maynard*, 615 F.3d at 564 (listing states and specific statutory provisions). Such statutes demonstrate that society recognizes this expectation of privacy in our movements and the threat of new technology to it. Moreover, those state courts with occasion to squarely address the question have likewise found a reasonable expectation of privacy is invaded by electronic tracking. *Id.* (summarizing those cases).

¶29     My colleagues maintain that our result in this case is compelled by the Court's reasoning in *Knotts* that a person has "no reasonable expectation of privacy in his movements" on public roads. 460 U.S. at 281. But, in the context we address today—the GPS tracking of a person's movements on public roads—five justices of the Court have implicitly declined to adopt that part of *Knotts*'s reasoning. *See Jones*, ___ U.S. at ___,

17

132 S. Ct. at 964 (Alito, J., concurring) (in context of long-term GPS tracking, concluding, with three justices joining, that expectation of privacy exists in Jones's movements although those movements were on public roads); *id*. at ___, 132 S. Ct. at 955 (Sotomayor, J., concurring) (agreeing with Justice Alito's conclusion and suggesting she would reach same conclusion as to short-term tracking). I, therefore, cannot agree that this aspect of *Knotts* must control our reasoning in this case.

¶30 Nonetheless, the Supreme Court has not retreated from the proposition that law enforcement officers do not engage in a search of constitutional dimension when conducting visual surveillance of a person's public movements. *See Knotts*, 460 U.S. at 281-82. Why, then, should law enforcement officers be constrained when merely effectuating the same surveillance more efficiently using the convenience of a remote electronic tracking tool?

¶31 Five justices of the Supreme Court have suggested that such efficiency and convenience may itself be the relevant constitutional distinction. Justice Alito, joined by three other justices, observed in *Jones* that "the greatest protections of privacy" have historically been "neither constitutional nor statutory, but practical." ___ U.S. at ___, 132 S. Ct. at 963 (Alito, J., concurring). "Traditional surveillance for any extended period of time was difficult and costly and therefore rarely undertaken." *Id.* In the same case, Justice Sotomayor wrote separately that "because GPS monitoring is cheap in comparison to conventional surveillance techniques and, by design, proceeds surreptitiously, it evades the ordinary checks that constrain abusive law enforcement

18

practices: 'limited police resources and community hostility.'" *Id.* at ___, 132 S. Ct. at 956 (Sotomayor, J., concurring), *quoting Illinois v. Lidster*, 540 U.S. 419, 426 (2004).

**¶32**     Placed in practical law enforcement terms, costly investigative techniques like traditional visual surveillance are not likely to be used unless law enforcement officers have good reason to believe the technique will be productive. The cost of such surveillance thereby creates a meaningful natural incentive to deploy the technique only when there is substantial cause—usually probable cause—to do so. *See Beck v. Ohio*, 379 U.S. 89, 91 (1964) (officers have probable cause when "the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense"). The same incentives do not apply to the comparatively cheap and easily deployed electronic surveillance tools in existence today. *See Pineda-Moreno*, 617 F.3d at 1125 (Kozinski, C.J., dissenting) (detailing the pervasiveness of electronic tracking devices and ease by which law enforcement may gain access to data generated by those devices). If we decline to characterize the use of such tools to monitor our public movements as a search of constitutional dimension, then, under our laws, governmental officials may track us without cause and at little expense—and do so lawfully. *See id.* ("If . . . we have no privacy interest in where we go, then the government can mine these databases without a warrant, indeed without any suspicion whatsoever."). I therefore agree with Justice Sotomayor that accepting such an outcome risks altering "'the relationship between citizen and government in a way that is inimical

to democratic society.'" *Jones*, ___U.S. at ___, 132 S. Ct. at 956 (Sotomayor, J., concurring), *quoting United States v. Cuevas-Perez*, 640 F.3d 272, 285 (7th Cir. 2011) (Flaum, J., concurring).

¶33        I cannot agree with Justice Alito's concurrence in *Jones*, or the suggestion of my colleagues, that the appropriate application of these principles must turn on the duration or distance of the movements monitored. *See* ___U.S. at ___, 132 S. Ct. at 964 (Alito, J., concurring).[6]  If we accept the premise that the sum total of a person's movements on a journey can disclose private features of their lives, then such private features may be discovered in monitoring of comparatively short duration as well as long. A person need not take a long or complex trip to expose "familial, political, professional, religious, and sexual associations" of the variety Justice Sotomayor correctly characterized as private. *Id.* at ___, 132 S. Ct. at 955 (Sotomayor, J., concurring).  Nor is it uncommon for Americans to take a comparatively brief morning or afternoon's journey, by foot or vehicle, specifically to seek out privacy and solitude that can be elusive at home or work.  That illegal searches of longer duration may impose more

---

[6]That formulation has not been adopted by a majority of the Supreme Court.  In fact, Justice Scalia, joined by four justices, specifically chides Justice Alito for the analytical chaos implied by Justice Alito's approach. *See Jones*, ___ U.S. at ___, 132 S. Ct. at 953.  One of those justices, Justice Sotomayor, as discussed below, expressly questions whether electronic monitoring need be prolonged to constitute a search. *See id.* at ___, 132 S. Ct. at 955 (Sotomayor, J., concurring).  Thus, the five justices not joining Justice Alito's concurrence have at minimum conveyed some skepticism of the logic of drawing constitutional distinctions between electronic tracking of short and long duration.

egregiously on expectations of privacy seems a poor foundation for the argument that shorter-term intrusions constitute no search at all.

¶34        Finally, wholly apart from the analytical difficulty in determining the precise duration of tracking that would first trigger constitutional concerns, few officers utilizing electronic tracking tools will be able to accurately predict the length of time such monitoring will be needed to produce evidentiary fruit—or how quickly that monitoring might reveal private features of the target's life.  Yet, under Justice Alito's dichotomy between prolonged tracking and shorter-term tracking, such predictions will be necessary for officers to determine the need for a warrant, and for magistrates to determine the propriety of issuing them.  For those reasons, I do not consider such a distinction practically feasible or analytically sound.

¶35        In Justice Alito's concurring opinion in *Jones*, a plurality of the Court also posited that advances in technology may necessarily change reasonable expectations of privacy, as methods for readily locating and observing each other become inexpensive and commonplace in contemporary society.  *See* ___ U.S. at ___, 132 S. Ct. at 962-63 (Alito, J., concurring).  In that context, Justice Alito suggested that we must ultimately choose between the convenience those technologies provide and our traditional scope of privacy.  *Id.*  But our courts have been fully capable of applying and enforcing traditional expectations of privacy in the face of evolving technology.  *See, e.g.*, *Kyllo*, 533 U.S. at 40 (characterizing use of thermal imaging equipment to detect thermal patterns within home as search requiring warrant); *Katz*, 389 U.S. at 353 (use of new technology to

eavesdrop on public phone booth without physical intrusion constitutes search requiring warrant).

¶36　　　　Justice Alito does not explain why our society cannot enjoy the efficiencies provided by evolving technology while maintaining our traditional scope of privacy. In the context presented here, we may continue to reap the benefits of the GPS systems embedded in our cellular telephones and cars without any worry that government may arbitrarily use those systems to track us. To achieve this, our courts need only recognize the privacy interest at stake and properly characterize such tracking as a search. Under our long-standing Fourth Amendment standards, no person could then be lawfully tracked through their cell phones or vehicle navigation systems in the absence of probable cause.

¶37　　　　Nor would applying traditional Fourth Amendment constraints on the use of such tools impose any novel hardship on our officers. We have historically depended on the presumptive professionalism and training of our officers in modifying their investigative techniques to conform to the requirements of the Fourth Amendment in a variety of contexts. *See, e.g.*, *Arizona v. Gant*, 556 U.S. 332, 349 (2009) (acknowledging law enforcement officers trained in Fourth Amendment issues). And, nothing about characterizing remote electronic tracking as a search would prevent officers from using such tools when they can articulate legally sufficient cause for doing so. The traditional exceptions to the warrant requirement would likewise find application here, allowing officers to use electronic tracking technologies upon a showing of probable cause coupled

22

with exigent circumstances, or upon a showing of consent. *See State v. Ault*, 150 Ariz. 459, 463, 724 P.2d 545, 549 (1986) (exigent circumstances exception to warrant requirement applies in "hot pursuit," when police respond to emergency, or face probability of destruction of evidence or possibility of violence); *State v. Ahumada*, 225 Ariz. 544, ¶ 6, 241 P.3d 908, 910 (App. 2010) (voluntarily given consent well-established exception to warrant requirement).

**¶38**        For the foregoing reasons, I conclude that the officer's remote electronic tracking of Estrella was a search that triggered the protection of the Fourth Amendment. I would therefore remand this case to the trial court for a determination of whether the state can articulate both probable cause to have tracked Estrella and a constitutionally permissible reason for failing to obtain a warrant before doing so.


/s/ *Peter J. Eckerstrom*
PETER J. ECKERSTROM, Presiding Judge