397 P.3d 363

**The STATE of Arizona, Appellee,**

**v.**

**Darren Lee WINEGARDNER, Appellant.**

**No. 2 CA-CR 2016-0110**

Court of Appeals of Arizona,
Division 2.

Filed May 31, 2017

Mark Brnovich, Arizona Attorney General, Joseph T. Maziarz, Chief Counsel, Phoenix, By Diane Leigh Hunt, Assistant Attorney General, Tucson, Counsel for Appellee

Joel Feinman, Pima County Public Defender, By Erin K. Sutherland, Assistant Public Defender, Tucson, Counsel for Appellant

Presiding Judge Staring authored the opinion of the Court, in which Judge Miller and Judge Espinosa concurred.

## OPINION

STARING, Presiding Judge:

¶1 Darren Winegardner appeals his conviction for sexual conduct with his minor stepdaughter, contending the trial court erred by precluding him from impeaching the victim with evidence of her prior misdemeanor shoplifting conviction. Because we conclude the trial court did not err, we affirm Winegardner's conviction and sentence.

### Factual and Procedural Background

¶2 We view the evidence in the light most favorable to sustaining Winegardner's conviction. *State v. Foshay*, 239 Ariz. 271, ¶2, 370 P.3d 618, 620 (App. 2016). One night in October 2012, Winegardner argued with his wife, Rachel, whose fifteen-year-old daughter, L.B., was present in the home. Rachel left the house, taking L.B.'s younger siblings with her. L.B., however, stayed behind with Winegardner.

¶3 After Rachel had left, Winegardner and L.B. began drinking, and she became intoxicated. Winegardner told L.B. it was "really common for stepdads and daughters to engage in sexual activities," and asked if she wanted to have sex with him. They then engaged in intercourse.

¶4 The next day, after L.B. told her mother what had occurred, Rachel contacted the police, who had L.B. taken to the Child Advocacy Center (CAC), where she underwent a forensic interview and a medical examination. The examining physician obtained swabs for a DNA[1] analysis, and an external genital swab subsequently revealed sperm matching Winegardner's DNA profile.

¶5 The state indicted Winegardner on one count of sexual conduct with a minor. He was convicted after a jury trial, and the trial court sentenced him to a mitigated term of

3.5 years' imprisonment. This appeal followed. We have jurisdiction pursuant to A.R.S. §§ 12–120.21(A)(1), 13–4031, and 13–4033.

### Discussion

¶6 Prior to L.B.'s trial testimony, Winegardner informed the trial court he intended to impeach her with a 2015 shoplifting conviction[2] because it was a "crime of moral turpitude." The court precluded him from doing so. After her direct examination, he again sought to introduce evidence of the prior conviction, and, again, the court refused.

¶7 Winegardner challenges the trial court's preclusion rulings on two bases: Rule 609, Ariz. R. Evid., required the court to permit evidence of the prior conviction because shoplifting involves "deceit or false presentation"; and the court's refusal to allow impeachment with the conviction violated his rights to due process and confrontation. "When reviewing a ruling on the admissibility of prior convictions, this court will overturn the trial court's determination only if it proves to have been a clear abuse of discretion." *State v. Green*, 200 Ariz. 496, ¶7, 29 P.3d 271, 273 (2001). "An error of law constitutes an abuse of discretion." *State v. Bernstein*, 237 Ariz. 226, ¶9, 349 P.3d 200, 202 (2015). We review constitutional issues de novo. *Foshay*, 239 Ariz. 271, ¶34, 370 P.3d at 625.

### Rule 609

¶8 Rule 609(a)(2) provides that a party may impeach a witness's character for truthfulness with "any crime regardless of punishment ... if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement." Winegardner asserts the misdemeanor offense of shoplifting "necessarily involves some sort of deceit or false presentation" and, thus, the trial court was required to

---

1. Deoxyribonucleic acid.

2. The record does not include evidence of the offense or the details, but at oral argument counsel agreed it could have only been a violation of

A.R.S. § 13–1805 involving property, which was not a firearm, valued at less than one thousand dollars.

admit evidence of the conviction. We disagree.

¶ 9 The parties do not cite, and we have not located, any published Arizona opinion directly addressing whether Rule 609(a)(2) permits a misdemeanor shoplifting conviction to be used for impeachment. Our rules of evidence, however, were adopted from the Federal Rules of Evidence. *State v. Johnson*, 132 Ariz. 5, 8, 643 P.2d 708, 711 (App. 1981). For that reason, "[w]hen interpreting an evidentiary rule that predominantly echoes its federal counterpart, we often look to the latter for guidance." *Green*, 200 Ariz. 496, ¶ 10, 29 P.3d at 273; *see also Johnson*, 132 Ariz. at 8, 643 P.2d at 711 ("in the absence of Arizona precedent as a guide to interpreting our [Rules of Evidence], we will look to the federal courts"). The language of Rule 609(a)(2), Ariz. R. Evid., follows that of Rule 609(a)(2), Fed. R. Evid., and the historical underpinnings of the federal rule, federal case law interpreting it, as well as our own precedent, support the conclusion that shoplifting is not a "dishonest act or false statement" within the meaning of Rule 609(a)(2), Ariz. R. Evid.

¶ 10 At common law, conviction for an "infamous crime" rendered a person "completely incompetent as a witness." 1 *McCormick on Evidence* § 42, at 184–85 (Kenneth S. Broun ed., 6th ed. 2006). Generally, an infamous crime was an offense "implying such a dereliction of moral principle, as carries with it a conclusion of a total disregard to the obligation of an oath." 2 John Henry Wigmore, *Evidence in Trials at Common Law* § 520, at 729 (rev. Chadbourn 1979), *quoting* Simon Greenleaf, *Evidence* § 373 (1842). Infamous offenses typically included treason and almost every felony, because they were punishable by death, and crimes "deemed of so grave a character as to render the offender unworthy to live, [were] considered as rendering him unworthy of belief in a Court of Justice." *Id.* at 729–30.

¶ 11 Historically, convictions for crimes considered *crimen falsi* also disqualified a witness from testifying. *Id.* at 729. Such crimes involved not only "the charge of falsehood," but also those "which may injuriously affect the administration of justice, by the introduction of falsehood and fraud." *Id.* at 730. *Crimen falsi* crimes included "forgery, perjury, subornation of perjury, suppression of testimony by bribery, or conspiracy to procure the absence of a witness, or other conspiracy, to accuse one of a crime, and barratry." *Id.* (footnotes omitted); *accord Ex Parte Wilson*, 114 U.S. 417, 423, 5 S.Ct. 935, 29 L.Ed. 89 (1885).

¶ 12 The enactment of Rule 601, Fed. R. Evid.,[3] ended the use of the prior common law grounds for disqualification in federal courts and converted issues of witness competency "into questions of witness credibility to be decided by the jury." 27 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure: Evidence* § 6002, at 17 (1990). Specifically, "[c]onviction of crime as a ground of impeachment [became] subject [to] Rule 609." Revised Draft of Proposed Rules of Evidence for the United States Courts and Magistrates, 51 F.R.D. 315, 384 (1971).

¶ 13 Rule 609(a)(2), Fed. R. Evid., permits a party to attack "a witness's character for truthfulness by evidence of a criminal conviction ... if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement." Since the rule's enactment, the Advisory Committee has maintained that offenses to which the rule applies are:

> [C]rimes such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement or false pretense, or any other offense, in the nature of *crimen falsi* the commission of which involves some element of untruthfulness, deceit or falsification bearing on the accused's propensity to testify truthfully.

Fed. R. Evid. 609 advisory committee notes, 1974 enactment; *see also id.* 1990 amends., 2006 amends. Rule 609, Fed. R. Evid., therefore, did not enlarge the common law catego-

---

**3.** Rule 601, Fed. R. Evid., in part, provides that, "Every person is competent to be a witness unless these rules provide otherwise." Similarly, Rule 601, Ariz. R. Evid., provides that, "Every person is competent to be a witness unless these rules or an applicable statute provides otherwise."

ry of infamous crimes. *See* Preliminary Draft of Proposed Rules of Evidence for the United States District Courts and Magistrates, 46 F.R.D. 161, 297 (1969) ("common law grounds of disqualification transposed into grounds of impeachment").

■ ¶ 14 In *State v. Malloy*, our supreme court determined the "phrase 'dishonesty or false statement' " contained in the contemporaneous version of Rule 609(a)(2), Ariz. R. Evid., "should be construed narrowly to include only those crimes involving some element of deceit, untruthfulness, or falsification." 131 Ariz. 125, 127, 639 P.2d 315, 317 (1981). The rule requires a misdemeanor offense to "necessarily involve" one of those elements in order for it to be admissible; it is irrelevant that the underlying facts of a particular conviction might have involved a dishonest act or false statement. *Id.* at 128, 639 P.2d at 318. The court also noted that narrow construction of the rule has "the advantage of being in conformity with the current federal practice" and that the Arizona Rules of Evidence "were modeled after the Federal Rules with the hope that evidence practices would be similar in state and federal court and that federal case law would be useful in Arizona." *Id.* at 128 & n.3, 639 P.2d at 318 & n.3; *see also State v. Hatch*, 225 Ariz. 409, ¶ 11, 239 P.3d 432, 434 (App. 2010) ("Like its federal counterpart, Rule 609(a) traces its origins to the common law's total prohibition on the testimony of those previously convicted of 'crimes of infamy': treason, felonies, and crimen falsi."). The *Malloy* court also concluded Rule 609 did not permit impeachment with evidence of a prior conviction for misdemeanor attempted burglary, and that, while "[c]riminal acts such as theft and robbery commonly carry a connotation of dishonesty," they do not necessarily "establish the trait of untruthfulness," which is the primary concern behind Rule 609. 131 Ariz. at 127–28, 639 P.2d at 317–18.

¶ 15 Likewise, in *Johnson*, 132 Ariz. at 8, 643 P.2d at 711, we concluded a "misdemeanor conviction for conspiracy to commit burglary did not involve 'dishonesty or false statement' " as contemplated by Rule 609, Ariz. R. Evid. In reaching that conclusion, we looked to the decision in *United States v. Ortega*, 561 F.2d 803, 805–06 (9th Cir. 1977), which held a conviction for misdemeanor shoplifting did not qualify under Rule 609(a), Fed. R. Evid., as an offense involving "dishonesty or false statement." *Johnson*, 132 Ariz. at 8, 643 P.2d at 711.[4] Undoubtedly, "[a]n absence of respect for the property of others is an undesirable character trait, but it is not an indicium of a propensity toward testimonial dishonesty." *Ortega*, 561 F.2d at 806. Further, "[h]uman experience does not justify an inference that a person will perjure himself from proof that he was guilty of petty shoplifting." *Id.*

■ ¶ 16 Thus, in light of the history and purpose of Rule 609, Ariz. R. Evid., the decisions in *Malloy* and *Johnson*, and persuasive federal precedent, we reject classifying shoplifting as a "dishonest act or false statement" within the meaning of Rule 609(a)(2).[5] The trial court did not err by

---

4. *See also United States v. Dunson*, 142 F.3d 1213, 1215 (10th Cir. 1998) (shoplifting does not per se involve dishonesty or false statement); *United States v. Amaechi*, 991 F.2d 374, 379 (7th Cir. 1993) ("shoplifting does not in and of itself qualify as a crime of dishonesty under Rule 609"); *United States v. Sellers*, 906 F.2d 597, 603 (11th Cir. 1990) ("crimes such as theft, robbery, or shoplifting do not involve 'dishonesty or false statement' within the meaning of Rule 609(a)(2)"); *McHenry v. Chadwick*, 896 F.2d 184, 188 (6th Cir. 1990) (shoplifting not a basis for Rule 609(a)(2) impeachment); *United States v. Ashley*, 569 F.2d 975, 979 (5th Cir. 1978) ("a conviction for shoplifting is not a conviction involving dishonesty or false statement within the meaning of Fed. R. Evid. 609(a)(2)").

5. Winegardner relies on cases that fail to account for the historical common law underpinning of Rule 609. *See People v. Segovia*, 196 P.3d 1126, 1132 (Colo. 2008) (holding act of shoplifting "probative of truthfulness" but misdemeanor shoplifting conviction is not); *Webb v. State*, 663 A.2d 452, 461 (Del. 1995) (prior case law defined "dishonesty or false statement" to include "dishonest conduct or stealing"); *State v. Melendrez*, 91 N.M. 259, 572 P.2d 1267, 1269 (N.M. Ct. App. 1977) (relying on "common human experience"), *quoting Gordon v. United States*, 383 F.2d 936, 940 (D.C. Cir. 1967); *State v. Gallant*, 307 Or. 152, 764 P.2d 920, 921–23 (1988) (interpreting "dishonesty" after voter initiative); *State v. Shaw*, 328 S.C. 454, 492 S.E.2d 402, 403–04 (S.C. Ct. App. 1997) (rejecting federal precedent); *State v. Butler*, 626 S.W.2d 6, 11 (Tenn. 1981) (based on prior precedent, shoplifting involved dishonesty); *State v. Brown*, 113 Wash.2d 520, 782 P.2d 1013,

precluding Winegardner from impeaching L.B. with her misdemeanor shoplifting conviction.

¶ 17 Winegardner also asserts we should characterize shoplifting as an offense involving dishonesty or false statement in light of case law designating the offense as a crime of moral turpitude. *See State v. Superior Court (Espinosa)*, 121 Ariz. 174, 176, 589 P.2d 48, 50 (App. 1978). Acts of moral turpitude involve "actions which 'adversely reflect on one's honesty, integrity, or personal values.'" *Benitez v. Dunevant*, 198 Ariz. 90, ¶ 15, 7 P.3d 99, 104 (2000), *quoting State ex rel. Dean v. Dolny*, 161 Ariz. 297, 300 n.3, 778 P.2d 1193, 1196 n.3 (1989), *overruled on other grounds by Derendal v. Griffith*, 209 Ariz. 416, ¶ 23 & n.8, 104 P.3d 147, 153–54 & n.8 (2005). Winegardner asks us to consider "moral turpitude" as a factor when determining whether a conviction is admissible under Rule 609(a)(2). We decline to do so.

¶ 18 As noted, in construing the phrase "dishonesty or false statement," the court in *Malloy* distinguished between those crimes which connote dishonesty and those "which establish a trait of untruthfulness." 131 Ariz. at 127, 639 P.2d at 317. Employing that analysis here, a conviction for misdemeanor shoplifting would "carry a connotation of dishonesty," but it would not bear on a witness's propensity for testimonial untruthfulness. *See id.*

### Due Process and Confrontation Clause

¶ 19 Winegardner also contends the trial court's refusal to permit impeachment of L.B. using her misdemeanor shoplifting conviction violated his rights to due process and confrontation. He argues "any evidence that could impeach [L.B.'s] credibility was both material and critical" to his defense and "[r]efusing to allow cross-examination on [her

shoplifting conviction] unconstitutionally limited [his] right to present a complete defense." Because he did not raise this argument below, however, we review only for fundamental, prejudicial error. *See State v. Henderson*, 210 Ariz. 561, ¶¶ 19–20, 115 P.3d 601, 607–08 (2005).

¶ 20 "The Due Process Clause of the Fourteenth Amendment to the United States Constitution guarantees a criminal defendant 'a meaningful opportunity to present a complete defense.'" *State v. Gilfillan*, 196 Ariz. 396, ¶ 19, 998 P.2d 1069, 1075 (App. 2000), *quoting California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). "The right to conduct a complete defense includes the right to cross-examine witnesses." *Foshay*, 239 Ariz. 271, ¶ 36, 370 P.3d at 626. The right to "effective cross-examination" is guaranteed by the Confrontation Clause of the Sixth Amendment. *Davis v. Alaska*, 415 U.S. 308, 315, 318, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

¶ 21 The right to present a complete defense may be jeopardized "by evidence rules that 'infring[e] upon a weighty interest of the accused' and 'are arbitrary or disproportionate to the purposes they are designed to serve.'" *Holmes v. South Carolina*, 547 U.S. 319, 324, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006), *quoting United States v. Scheffer*, 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998) (alteration in *Holmes*).[6] "Of course, the right to present relevant testimony is not without limitation," and "'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.'" *Rock v. Arkansas*, 483 U.S. 44, 55, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987), *quoting Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). Trial judges may "limit reasonably a

1027–31 (1989) (considering ordinary meaning and state court decisions).

**6.** For example, rules may not be relied upon to exclude evidence of a third party's guilt simply because there is strong evidence of defendant's guilt, *Holmes*, 547 U.S. at 328–31, 126 S.Ct. 1727, per se prohibit the admission of a defendant's "hypnotically refreshed testimony," *Rock v. Arkansas*, 483 U.S. 44, 56–62, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987), "exclude competent, reli-

able evidence bearing on the credibility of a confession," *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986), prohibit impeachment of a defendant's own witness who had previously confessed to the charged crime, *Chambers v. Mississippi*, 410 U.S. 284, 295, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), or bar "alleged accomplice[s] from testifying on behalf of the defendant," *Washington v. Texas*, 388 U.S. 14, 22, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967).

criminal defendant's right to cross-examine a witness 'based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *Michigan v. Lucas,* 500 U.S. 145, 149, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991), *quoting Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *see also United States v. Nobles,* 422 U.S. 225, 241, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) ("The Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system....").

¶ 22 Precluding Winegardner from cross-examining L.B. about her shoplifting conviction did not infringe on his right to present a complete defense or cross-examination. Evidence of the conviction was not necessary to reveal any "possible biases, prejudices, or ulterior motives" behind her testimony. *See Davis,* 415 U.S. at 316, 94 S.Ct. 1105; *State v. McDaniel,* 127 Ariz. 13, 15, 617 P.2d 1129, 1131 (1980) ("if the trial judge has excluded testimony which would clearly show bias, interest, favor, hostility, prejudice, promise or hope of reward, it is error"), *quoting State v. Holden,* 88 Ariz. 43, 55, 352 P.2d 705, 714 (1960). And, while "[t]he introduction of evidence of a prior crime is ... a general attack on the credibility of a witness," *Davis,* 415 U.S. at 316, 94 S.Ct. 1105, L.B.'s conviction appears to bear only tangentially on her credibility, if at all, *see Malloy,* 131 Ariz. at 127–28, 639 P.2d at 317–18 ("Misdemeanors which do not contain an element of deceit or falsification are not simply low in probative value, but more often than not wholly lack such probative value.").

¶ 23 Notwithstanding his failure to establish any error, fundamental or otherwise, Winegardner has also failed to demonstrate that any prejudice resulted from the preclusion of L.B.'s conviction. *See Henderson,* 210 Ariz. 561, ¶¶ 26–27, 115 P.3d at 608–09 (showing required to establish prejudice from fundamental error differs in each case depending on the alleged error; defendant must show a reasonable jury could have reached a different result). At trial, Winegardner did not contest that his sperm was found on the victim's genital area. Rather, his defense was that, as a result of his involuntary and unknowing ingestion of sleep medication, he did not knowingly, intentionally, or voluntarily engage in sexual intercourse with L.B. He introduced expert testimony describing the potential side effects of the medication, which include amnesia and parasomnia. During cross-examination, he elicited from L.B. her previous admissions that she had put a sleeping pill in his drink. He also elicited evidence of several prior inconsistent statements about the events that night—including a second interview with the CAC in which she claimed she had fabricated the entire incident. In light of the undisputed DNA evidence supporting Winegardner's conviction, as well as the extensive evidence impeaching L.B.'s credibility already in the record, we cannot conclude a reasonable jury could have reached a different result had it been apprised of L.B.'s misdemeanor shoplifting conviction.

### Disposition

¶ 24 For the foregoing reasons, we affirm Winegardner's conviction and sentence.