**UNITED STATES of America, Appellee,**

v.

**Gilbert M. ORTEGA, Appellant.**

**No. 77–1811.**

United States Court of Appeals,
Ninth Circuit.

Sept. 28, 1977.

Michael Tryon, Asst. Federal Public Defender, Phoenix, Ariz., argued for appellant.

Daniel R. Drake, Asst. U. S. Atty., Tucson, Ariz., argued for appellee.

Before BROWNING and HUFSTEDLER, Circuit Judges, and EAST,* District Judge.

HUFSTEDLER, Circuit Judge:

Gilbert Ortega ("Gilbert") appeals from his conviction for possessing stolen mail in violation of 18 U.S.C. § 1708. Three government checks were stolen from the mail and presented for payment by a person who was identified as Gilbert by the bank tellers. The Government's handwriting expert testified that the forged endorsements on each of the checks were written by Gilbert. The only controverted fact was the identification of Gilbert as the person who possessed the stolen mail. Gilbert denied any involvement; he claimed that he was mistaken for his brother, Henry, whom he strongly resembles and whose handwriting is similar to his own.

Three issues are presented on appeal. Did the district court err (1) in excluding

---

* Honorable William G. East, Senior United States District Judge, District of Oregon, sitting by designation.

testimony from appellant's mother that Henry had tampered with mail on other occasions and had once forged her signature on a check, (2) in denying Gilbert's motion to prevent the Government from impeaching him with a prior misdemeanor conviction, and (3) in prohibiting him from impeaching a government witness with a prior felony conviction?

## I

On direct examination, Mrs. Ortega testified that her son Henry drove Gilbert's car (which had been identified as being the same car driven by the person who cashed one of the checks), that Henry had visited the apartment complex where the checks were stolen, and that Henry and Gilbert looked so much alike that "you can't tell them apart when they are together." On direct examination, defense counsel asked her whether she had ever had trouble with her mail box. She replied affirmatively. He then said, "What trouble did you have with the mail box?" The prosecutor objected, without stating the basis for his objection, and a discussion thereafter ensued outside the presence of the jury. Defense counsel explained that he intended to show through Mrs. Ortega that "her son Henry opened her locked mail box with a fingernail file. She was an eye witness to that. The prosecutor has argued that he had no access to this mail box. I would like to show that he knew how to get in the mail boxes." The district court foreclosed the line of interrogation on the ground that "there is no showing of any similarity or anything else." Defense counsel also asked whether he could elicit from Mrs. Ortega testimony that Henry had forged her name on a check on a prior occasion. The court refused, stating, "I don't think it is really probative of anything having to do with the defendant." In short, the question is whether the district court correctly excluded the proffered evidence on the ground that it was irrelevant.

The excluded testimony was relevant only if one could infer from proof of Henry's prior acts in opening his mother's mail box and from his forgery that Henry, rather than Gilbert, may have been the person who did the acts charged to Gilbert. We agree with the district court that these isolated acts on Henry's part were not enough to justify an inference that he may have been the guilty brother. The evidence does not tend to prove that Henry had a mail-stealing habit, from which one could infer that he repeated the performance on the occasions in question. Evidence that Henry forged his mother's signature on a check on one occasion does not warrant an inference that he forged endorsements regularly, and, therefore, that he did so with respect to the three checks in issue. No evidence showed any similarity between Henry's prior illegal acts and the acts resulting in the charges against Gilbert. All that the proffered evidence would prove is that Henry is untrustworthy, but it does not tend to prove that Henry was more untrustworthy than Gilbert, or at least as likely as Gilbert to have been the person in possession of this stolen mail.

## II

Over objection, the district court permitted the Government to impeach Gilbert with his prior misdemeanor conviction for taking two bottles of vodka from a market without paying for them.[1] Rule 609(a) Fed. Rules of Evid. permits impeachment by proof of conviction of a misdemeanor only if the crime involved dishonesty or false statement. The narrow question is whether the shoplifting conviction involves "dishonesty or false statement" within the meaning of Rule 609(a).

1. The Arizona statute under which he was convicted provides: "A person who willfully takes possession of any goods, wares or merchandise offered for sale by any wholesale or retail store or other mercantile establishment without the knowledge or consent of the seller, with intention of converting such goods, wares or merchandise to his own use without having paid the purchase price thereof, is guilty of shoplifting or willful concealment, and upon a conviction thereof, is guilty of a misdemeanor. . . ." (5 Ariz.Rev.Stats. § 13–673 (Supp.1973).)

Because the House and Senate versions of Rule 609 differed, the rule was considered by the Committee on Conference which worked out a compromise that was ultimately adopted. The Conference Committee explained its views in its joint statement which, in pertinent part, says: ·

"By the phrase 'dishonesty and false statement' the Conference means crimes such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of *crimen falsi*, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully.

"The admission of prior convictions involving dishonesty and false statement is not within the discretion of the court. Such convictions are peculiarly probative of credibility and, under this rule, are always to be admitted. Thus, judicial discretion granted with respect to the admissibility of other prior convictions is not applicable to those involving dishonesty or false statement." (Conference Report, H.R. No. 93–1597, reprinted 3 Weinstein's Evidence, 609–39 (1976).)

■ Before the adoption of the Evidence Code, the Circuits divided on the question whether such crimes as petty larceny reflected adversely on the witness' veracity. (Many of the pre-code cases are collected in *Government of Virgin Islands v. Toto* (3d Cir. 1976) 529 F.2d 278.)[2] We adopt the views of the Third Circuit in *Toto* because it accords with the expressed intent of the draftsmen of Rule 609, limiting the "dishonesty and false statement" language to those crimes that involve some element of misrepresentation or other indicium of a propensi-

ty to lie and excluding those crimes which, bad though they are, do not carry with them a tinge of falsification.

■ Human experience does not justify an inference that a person will perjure himself from proof that he was guilty of petty shoplifting, as *Toto* recognizes. · An absence of respect for the property of others is an undesirable character trait, but it is not an indicium of a propensity toward testimonial dishonesty.[3]

### III

■ The district court erred in preventing Gilbert from impeaching a government witness with a prior felony conviction. The district court excluded the evidence after determining that its probative value did not outweigh its prejudicial effect. Rule 609(a) does not permit any weighing process with respect to such impeaching evidence elicited by a defendant. The evidence produced in his defense cannot have a prejudical effect "to the defendant."

Error in the restriction of a defendant's cross-examination of a government witness has constitutional implications and, therefore, we must be extremely hesitant in brushing aside such error as harmless. (*Davis v. Alaska* (1974) 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347; *Smith v. Illinois* (1968) 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956; *Alford v. United States* (1931) 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624; *United States v. Alvarez-Lopez* (9th Cir. 1977) 559 F.2d 1155. See also *United States v. Dixon* (9th Cir. 1976) 547 F.2d 1079, 1083–84.)

■ We need not decide whether error in this case was of constitutional magnitude requiring reversal, however, because we are convinced that the combined errors in per-

---

**2.** The *Toto* case was decided under pre-code law, but the court noted and discussed Rule 609(a), correctly observing that the rule had codified the settled rule in the Third Circuit. To the same effect, *Government of Virgin Islands v. Testamark* (3rd Cir. 1976) 528 F.2d 742, 743.

**3.** The Fifth Circuit may have a contrary view. In *United States v. Carden* (5th Cir. 1976) 529 F.2d 443, the court observed, "We believe that

this impeachment was admissible since the crime at issue [petty larceny] involved dishonesty." The court did not discuss the legislative history of Rule 609, nor any of the case law. The point had been submitted without argument. The statement may not be a holding because the court added, "[E]ven if this were error, however, we would be persuaded by the record it did not constitute grounds for reversal." (529 F.2d at 446.)

mitting Gilbert to be impeached by his shoplifting conviction and in refusing to permit impeachment of a government witness by proof of a prior felony conviction were prejudicial.

REVERSED.