**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 24 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

DERRICK DUNSON,

    Defendant-Appellant.

No. 97-1163

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 94-CR-159-B)**

---

W. Melville Dole, Stayton & Dole, P.C., Aurora, Colorado, for Defendant-Appellant.

James C. Murphy (Henry L. Solano, United States Attorney, and Charlotte J. Mapes, Assistant U.S. Attorney, with him on the brief), Assistant U.S. Attorney, Denver, Colorado, for Plaintiff-Appellee.

---

Before **PORFILIO**, **HOLLOWAY**, and **TACHA**, Circuit Judges.

---

**PORFILIO**, Circuit Judge.

---

A jury convicted Derrick Dunson on two counts of distributing crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii) based primarily on the testimony of Fidel Garner, the government's cooperating witness. Mr. Dunson appeals his conviction, claiming the district court erred by: (1) excluding evidence of Mr. Garner's prior conviction for shoplifting; (2) precluding Mr. Dunson from recalling a witness to demonstrate Mr. Garner's bias; and (3) finding sufficient evidence to support Mr. Dunson's conviction. We perceive no error and affirm.

In July 1993, Fidel Garner sold crack cocaine to an undercover police officer. After confronting Mr. Garner with the evidence against him, FBI Special Agent Schlaff persuaded him to assist the government as a confidential informant and cooperating witness. As part of this arrangement, Mr. Garner agreed to participate in controlled drug buys.[1]

---

[1]The controlled drug buys in this case were conducted in the following manner: Immediately before the controlled buy, FBI agents searched Mr. Garner's person and car to ensure he had no drugs or firearms. The agents then wired Mr. Garner with a microphone, provided him with the money to facilitate the buy, and recorded the serial numbers of the money by photocopying the bills. After the buy, the agents met Mr. Garner, debriefed him, and searched his person and car to retrieve the drugs purchased.

Under ordinary circumstances, the agents would then apprehend the seller and compare the serial numbers of money found on his or her person to the serial numbers recorded at the start of the operation. The agents would arrest the suspect and the cooperating witness would testify at the suspect's trial. Here, however, to protect Mr. Garner's status as a confidential informant in other ongoing cases, the government did not arrest Mr. Dunson until almost two years after the controlled buys discussed below.

On March 1 and March 10, 1994, Mr. Garner, working with Agent Schlaff, participated in two controlled cocaine buys targeting the defendant, Derrick Dunson. The FBI agents recorded telephone conversations between Mr. Garner and Mr. Dunson, took surveillance photographs, and shot videotape of the buys. In addition, Mr. Garner wore a broadcasting microphone during his two encounters with Mr. Dunson. None of the FBI photographs, videos, or tape recordings provided any direct evidence a drug transaction occurred. Mr. Garner furnished the only direct evidence implicating Mr. Dunson in illegal activity.

During Mr. Dunson's trial, both the government and the defense thoroughly explored Mr. Garner's background as a "big time" drug dealer and the terms of his agreement with the government. Agent Schlaff testified in return for Mr. Garner's cooperation, he promised to bring Mr. Garner's assistance to the attention of the prosecuting attorney. In fact, instead of facing a mandatory minimum of ten years in prison, the prosecuting attorney offered Mr. Garner less than two years in a prison camp. Agent Schlaff also testified the government provided Mr. Garner with approximately $15,000 in cash and in kind to cover "[e]xpenses that were incurred during the investigation [such as] hotel rooms, gas, moving expenses."

While instructing the jury, the district court told them an informant's or immunized witness' testimony should be considered with caution. The court explained Mr. Garner was an informant and an immunized witness in the case and instructed the jury it must

- 3 -

"determine whether the informer's [or] immunized witness' testimony has been affected by self-interest or by the agreement he has with the [government] or his own interest in the outcome of this case or by prejudice against the defendant." The jury returned a guilty verdict. The court sentenced Mr. Dunson to 97 months' imprisonment on each count to be served concurrently.

## Shoplifting Conviction as Impeachment

Before trial, Mr. Dunson expressed his intention to impeach Mr. Garner with evidence of Mr. Garner's prior conviction for shoplifting. The government objected, arguing shoplifting did not involve "dishonesty or false statement" and, therefore, did not fall within the parameters of Fed. R. Evid. 609(a)(2) governing admission of prior misdemeanor convictions.[2] The district court sustained the government's objection:

> A straight theft offense is not the type of offense involving Rule 609(a)(2), dishonesty or false statement contemplated by that rule. You know, a bad check, fraud by check, perhaps use of a stolen credit card where one represents one's self dishonestly to be the lawful possessor of that credit card might be a type of theft that would fall under 609(a)(2) as would a bad check. But straight shoplifting, I think you are right, falls outside the scope of 609(a)(2).

We perceive no error in the court's analysis.

---

[2]Fed. R. Evid. 609(a) provides:

For the purpose of attacking the credibility of a witness,
    ....
        (2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.

In ***United States v. Mejia-Alarcon***, 995 F.2d 982 (10th Cir. 1993), we reviewed the law applicable to Rule 609(a)(2):

> We have narrowly defined the term "dishonesty and false statement" as used in Rule 609(a)(2). . . .  The Conference Committee Report on the rule specified the type of crimes contemplated by the rule:
>> By the phrase "dishonesty and false statement" the Conference means crimes such as perjury or subordination of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of crimen falsi, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully. . . .
> Thus, relying on the Conference Committee Report, we have held that to be admissible under Rule 609(a)(2), the prior conviction must involve "some element of deceit, untruthfulness, or falsification which would tend to show that an accused would be likely to testify untruthfully." ***United States v. Seamster***, 568 F.2d 188, 190 (10th Cir. 1978).
>
> Consequently, we have held that crimes like burglary, robbery, and theft are not automatically admissible under Rule 609(a)(2), but that a conviction for making false and misleading statements in the sale of securities is.

***Id.*** at 988-89.  Following the reasoning of ***Mejia-Alarcon***, we do not believe the district court erred in concluding shoplifting was not "automatically" a crime involving "dishonesty or false statement" within the meaning of Rule 609(a)(2).  *See, e.g.*, ***United States v. Amaechi***, 991 F.2d 374, 379 (7th Cir. 1993) ("[S]hoplifting does not in and of itself qualify as a crime of dishonesty under Rule 609."); ***United States v. Sellers***, 906 F.2d 597, 603 (11th Cir. 1990) ("[C]rimes such as theft, robbery, or shoplifting do not involve 'dishonesty or false statement' within the meaning of Rule 609(a)(2)."); ***McHenry v. Chadwick***, 896 F.2d 184, 188 (6th Cir. 1990); ***United States v. Ortega***, 561 F.2d 803, 806 (9th Cir. 1977) ("An absence of respect for the property of others is an

undesirable character trait, but it is not an indicium of a propensity toward testimonial dishonesty.").

Mr. Dunson argues, however, even if shoplifting does not per se involve dishonesty or false statement, in certain factual situations it may still fall within the purview of Rule 609(a)(2). *See, e.g.*, **Mejia-Alarcon,** 995 F.2d at 989-90 ("[W]e have suggested that the trial court may look beyond the elements of an offense that is not considered a per se crime of dishonesty to determine whether the particular conviction rested upon facts establishing dishonesty or false statement."); **Seamster**, 568 F.2d at 191 ("We conclude that the prior convictions of burglary offered as impeaching evidence in this case were not automatically admissible under Rule 609(a)(2). This would not exclude theft cases arising out of fraudulent and deceitful conduct which might bring them within the ambit of Rule 609(a)(2)."). In particular, Mr. Dunson insists, without citing any factual support, "the instant shoplifting conviction involved elements of both deceit and untruthfulness."

Our review of the record, however, reveals no support for Mr. Dunson's conclusory assertion. During a hearing on the motion in limine, Mr. Dunson did not argue Mr. Garner's shoplifting involved deceit or dishonesty, nor did he proffer any facts suggesting it did. Counsel merely stated to the court, "the theft was from a Foley's I think in Aurora. It had to do with a thing of cologne. That's it." Nothing in this declaration

- 6 -

suggests to this court or could have suggested to the trial court, Mr. Garner's shoplifting was in anyway perpetrated through deceit or dishonesty as Rule 609(a)(2) envisions.

Faced with a dearth of developed facts to support his claim, Mr. Dunson suggests it was incumbent upon the trial court to sua sponte explore the circumstances underlying Mr. Garner's conviction in search of some indicia of deceit or dishonesty. We disagree. While a court may *consider* evidence tending to demonstrate Rule 609(a)(2) governs, the court need not ferret it out; that responsibility falls squarely on the proponent's shoulders and simply was not borne in this case.

**Recall of Agent Schlaff**

During its case in chief, the prosecution elicited testimony from Agent Schlaff detailing many of the benefits Mr. Garner received in return for his cooperation. Mr. Dunson chose not to cross-examine Agent Schlaff on this aspect of his testimony. During the subsequent examination of Mr. Garner, the prosecution again detailed the numerous benefits provided by the government. When Mr. Dunson cross-examined Mr. Garner, however, he testified he did not receive any money from the government to relocate his family members. Believing this testimony was incorrect, Mr. Dunson asked to recall Agent Schlaff for the purpose of eliciting testimony "that in fact in 1995 [Agent Schlaff] gave to Fidel Garner some 3,000 bucks for the purposes of relocating the mother of one of Mr. Garner's babies." According to Mr. Dunson's trial counsel, "[i]f the witness on the stand says A, B and C, [and] I have another witness to say that's not true . . . I think I

can put that into evidence." After hearing argument on the issue, the court concluded the inquiry would "lead[] us off into a collateral inquiry that is inappropriate here. I am going to sustain that government objection." We review the court's decision to exclude the evidence for an abuse of discretion. *United States v. Janusz*, 135 F.3d 1319, 1323 (10th Cir. 1998).

"[I]t is well settled that it is not improper for the trial judge to limit impeachment evidence on matters that are deemed collateral or irrelevant." *United States v. Walker*, 930 F.2d 789, 791 (10th Cir. 1991). We have stated a matter is collateral "if it could not have been introduced in evidence for any purpose independent of the impeachment." *Id.* (citation omitted). However, "[b]ias is never classified as a collateral matter which lies beyond the scope of inquiry." *United States v. Keys*, 899 F.2d 983, 986 n.2 (10th Cir. 1990) (citation omitted).

On appeal, focusing on bias, Mr. Dunson claims the court erred in holding the matter was collateral. He maintains Agent Schlaff's testimony would have established Mr. Garner's bias towards Mr. Dunson by demonstrating "Garner's potential fear of this Defendant, fear which could explain to the jury why Garner might want to make sure the Defendant was convicted and incarcerated for a lengthy period." However, after a thorough search of the record, we are unable to exhume a single mention of the words "bias" or "fear" in counsel's arguments to the trial court. To the contrary, Mr. Dunson's argument focused exclusively on the impeachment value of Agent Schlaff's proposed

- 8 -

testimony. Insofar as Mr. Dunson only proffered the testimony to the trial court for impeachment purposes and, because we have specifically held impeachment testimony may be collateral, we do not believe the district court's similar conclusion in this case constitutes an abuse of discretion.

## Sufficiency of the Evidence

Indisputably, the prosecution's case against Mr. Dunson rose and fell on Mr. Garner's testimony. In fact, Mr. Garner provided the only evidence establishing a number of the crucial elements of the crimes. As the sole support for his insufficiency of the evidence argument, Mr. Dunson maintains we must disregard Mr. Garner's testimony as incredible.

Mr. Dunson admits assessing the credibility of a witness is usually the province of the jury. *See, e.g.*, **United States v. Pappert**, 112 F.3d 1073, 1077 (10th Cir. 1997); **United States v. Russell**, 109 F.3d 1503, 1506 (10th Cir. 1997). However, Mr. Dunson, citing **United States v. Gadison**, 8 F.3d 186, 190 (5th Cir. 1993), insists Mr. Garner's testimony may be disregarded as incredible if it "assert[s] facts that the witness physically could not have observed or events that could not have occurred under the laws of nature." *Id.* (citation omitted). Suffice it to say, we confidently conclude nature's laws remain undisturbed.

**AFFIRMED**.