IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

---

**STATE OF ARIZONA,**
*Appellee,*

*v.*

**DARREN LEE WINEGARDNER,**
*Appellant.*

---

No. CR-17-0269-PR
Filed March 26, 2018

---

Appeal from the Superior Court in Pima County
The Honorable Howard J. Fell, Judge Pro Tempore
No. CR20144179-001
**AFFIRMED**

Opinion of the Court of Appeals, Division Two
242 Ariz. 430 (2017)
**VACATED**

---

COUNSEL:

Mark Brnovich, Arizona Attorney General, Dominic E. Draye, Solicitor General, Joseph T. Maziarz, Chief Counsel, Criminal Appeals Section, Phoenix, Diane Leigh Hunt (argued), Assistant Attorney General, Tucson, Attorneys for State of Arizona

Joel Feinman, Pima County Public Defender, Erin K. Sutherland (argued), Assistant Public Defender, Tucson, Attorneys for Darren Lee Winegardner

---

CHIEF JUSTICE BALES authored the opinion of the Court, in which VICE CHIEF JUSTICE BRUTINEL and JUSTICES PELANDER and TIMMER joined. JUSTICE LOPEZ, joined by JUSTICES BOLICK and GOULD, dissented in part and concurred in the result.

---

CHIEF JUSTICE BALES, opinion of the Court:

**¶1**         Arizona Rule of Evidence 609(a)(2) provides that when a party seeks to attack "a witness's character for truthfulness by evidence of

a criminal conviction . . . , the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving - or the witness's admitting - a dishonest act or false statement." We hold that a conviction for shoplifting, as codified in A.R.S. § 13-1805(A), is not automatically admissible under Rule 609(a)(2) because the crime does not necessarily require the prosecution to prove "a dishonest act or false statement" within the meaning of the rule. Evidence of a shoplifting conviction is admissible only when the court can readily determine that the conviction turned on such proof.

## I.

¶2 The State indicted Darren Winegardner on one count of sexual conduct with a minor, alleging that he engaged in sexual intercourse with his stepdaughter, L.B. At trial, the prosecution called L.B. to testify. Winegardner told the court that he intended to impeach L.B. with a 2015 misdemeanor shoplifting conviction. He offered no details of the conviction other than stating that it was a crime of moral turpitude. Finding that the "probative value does not substantially outweigh the danger of unfair prejudice," the trial court refused to admit the impeachment evidence. The jury found Winegardner guilty, and the court sentenced him to a mitigated term of 3.5 years' imprisonment.

¶3 Noting that Rule 609(a)(2) requires courts to admit evidence of convictions involving dishonest acts or false statements, Winegardner argued on appeal that the trial court committed reversible error by precluding him from impeaching L.B. with evidence of the shoplifting conviction. The court of appeals disagreed and rejected classifying shoplifting as a "dishonest act or false statement" for purposes of Rule 609(a)(2). *State v. Winegardner*, 242 Ariz. 430, 434 ¶ 16 (App. 2017).

¶4 We granted review because the proper interpretation of Rule 609(a)(2) is of statewide importance. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## II.

¶5 Although we review a trial court's decision regarding the admission of evidence for abuse of discretion, *State v. Gill*, 242 Ariz. 1, 3 ¶ 7 (2017), we review the interpretation of court rules de novo, *State v.*

*Fitzgerald*, 232 Ariz. 208, 210 ¶ 10 (2013), and apply principles of statutory construction when doing so, *Spring v. Bradford*, 243 Ariz. 167, 170 ¶ 12 (2017). "Under those principles, if a rule's language is subject to only one reasonable meaning, we apply that meaning. When the language can reasonably be read more than one way, however, we may consider the [rule]'s subject matter, legislative history, and purpose, as well as the effect of different interpretations, to derive its meaning." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Bell v. Indus. Comm'n*, 236 Ariz. 478, 480 ¶ 7 (2015)).

## A.

**¶6** Arizona Rule of Evidence 609 governs impeachment by evidence of a criminal conviction. Subsection (a)(1) provides that felony convictions are generally admissible, subject to Rule 403 in civil cases or in criminal cases in which the witness is not a defendant. Subsection (a)(2) mandates the admission of evidence of any conviction "if the court can readily determine that establishing the elements of the crime required proving - or the witness's admitting - a dishonest act or false statement." In contrast to (a)(1), subsection (a)(2) mandates the admission of evidence of a prior conviction regardless of any consideration of its prejudicial effect under Rule 403.

**¶7** This case turns on whether a shoplifting conviction under Arizona law necessarily requires proof of a "dishonest act" as that term is used in Rule 609(a)(2). Although words in rules generally are to be understood in their ordinary, everyday meanings, the context in which they are used may indicate they bear a technical meaning. *See In re Nelson*, 207 Ariz. 318, 322 ¶ 17 (2004) (noting that "costs" is a term of art and applying limited meaning consistent with caselaw); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 69-77 (2012) (discussing "ordinary meaning" rule and how context may affect its application).

**¶8** Adopted in 1977, Arizona's evidentiary rules were modeled on the federal rules. Supreme Court of Arizona, Admin. Order No. 2010-42; *see also State v. Malloy*, 131 Ariz. 125, 126 (1981). In 2010, we created an ad hoc committee on the rules of evidence to identify differences between the federal and state rules and to consider changes to conform the state rules to the federal rules. *See* Supreme Court of Arizona, Admin. Order No. 2010-

42. Since its amendment in 2012, Arizona Rule 609 has matched its federal counterpart. *Compare* Ariz. R. Evid. 609, *with* Fed. R. Evid. 609. When an Arizona evidentiary rule mirrors the corresponding federal rule, we look to federal law for guidance. *See Hernandez v. State*, 203 Ariz. 196, 198 ¶ 10 (2002); *see also* Ariz. R. Evid. prefatory cmt. to 2012 amendments. Although the federal courts' interpretation of the Federal Rules of Evidence does not control our interpretation of our own evidentiary rules, federal precedent is particularly persuasive given that we have expressly sought to conform our rules to the federal rules.

¶9        Given our rule's origins and our desired conformity with the federal rules, we consider the federal rule's legislative history to see whether its drafters intended to give the terms "dishonest act" and "false statement" a particular meaning. "[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word . . . unless otherwise instructed." *Morissette v. United States*, 342 U.S. 246, 263 (1952); *see also Sekhar v. United States*, 570 U.S. 729, 733 (2013) ("[A]s Justice Frankfurter colorfully put it, 'if a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it.'" (quoting Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 537 (1947))).

¶10        A conference committee developed the federal rule's final language to resolve differences between House and Senate versions of the rule. *United States v. Ortega*, 561 F.2d 803, 806 (9th Cir. 1977). The committee explained that

> the phrase "dishonesty and false statement" . . . means crimes such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offenses in the nature of crimen falsi, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully.

H.R. Rep. No. 93-1597, at 9 (1974) (Conf. Rep.); *see also Ortega*, 561 F.2d at 806. In light of this explanation, the rule's drafters clearly intended a specific legal meaning for the terms "dishonest act" and "false statement."

4

¶11 We considered Rule 609(a)(2)'s language in *Malloy*, when we reviewed whether burglary was a crime of dishonesty for purposes of the rule. 131 Ariz. at 127. We reasoned that, considering the purpose and history of Rule 609, "the phrase 'dishonesty or false statement' should be construed narrowly to include only those crimes involving some element of deceit, untruthfulness, or falsification." *Id.* In turn, examining the language of A.R.S. § 13-1506, we found that "[t]he crime of burglary does not necessarily involve an element of deceit or falsification and, consequently, is not admissible under Rule 609(a)(2)." *Id.* at 128. *Malloy* recognizes that although acts of theft and robbery evoke a common connotation of dishonesty, Rule 609(a)(2) is concerned only with crimes that "establish the trait of untruthfulness." *Id.* at 127.

¶12 Because such a character trait is relevant to evaluating credibility, convictions for criminal offenses that demonstrate the trait of untruthfulness warrant mandatory admission under the rule. By contrast, criminal offenses that primarily involve stealth, such as burglary, or force, such as robbery or assault, do not inherently demonstrate a trait of untruthfulness and should not be admitted under Rule 609(a)(2). *See United States v. Hayes*, 553 F.2d 824, 827-28 (2d Cir. 1997). (Felony convictions for such offenses, however, may be admissible under Rule 609(a)(1).) Although any criminal offense arguably "evinces a lack of character and disregard for all legal duties, . . . Congress has not accepted that expansive theory . . . [and] has 'narrowly defined' the offenses comprehended by Rule 609(a)(2)." *United States v. Millings*, 535 F.2d 121, 123 (D.C. Cir. 1976). We agree, and, as in *Malloy*, we hold that the phrase "dishonest act or false statement" should be construed narrowly to include only those crimes that involve deceit, untruthfulness, or falsification.

**B.**

¶13 *Malloy* instructs that determining whether a prior conviction is admissible for impeachment purposes under Rule 609(a)(2) depends on the statutory language of the underlying offense and whether the conviction required proof of a dishonest act or false statement. Winegardner argues that Arizona's shoplifting statute contains elements of deceit and fraud and therefore satisfies Rule 609(a)(2)'s standard for admission.

¶14          Under A.R.S. § 13-1805(A), a person commits shoplifting when he or she knowingly obtains

> merchandise . . . displayed for sale . . . with the intent to deprive [another] of such goods by:
>
> (1) Removing . . . the goods . . . without paying the purchase price; or
>
> (2) Charging . . . the goods to a fictitious person or any person without that person's authority; or
>
> (3) Paying less than the purchase price of the goods by some trick or artifice . . . ; or
>
> (4) Transferring the goods from one container to another; or
>
> (5) Concealment.

¶15          Although multiple subsections of the statute include elements of dishonesty and false statement, others do not.  Winegardner unpersuasively contends that even subsection (1) of the statute includes elements of deceit because the "shoplifter consciously misleads the true owner and fails to reveal true ownership by taking the item from the store." Although purposefully leaving a store with an item without paying for it is dishonest in layman's terms, it does not meet Rule 609(a)(2)'s threshold of establishing a trait of untruthfulness. *See Malloy*, 131 Ariz. at 128 (reaching same conclusion with respect to attempted burglary).  Likewise, subsection (5) indicates an element of stealth but does not necessarily establish a trait of untruthfulness.  Subsections (2), (3), and (4), however, might implicate dishonesty and false statement and could establish a basis for admissibility under Rule 609(a)(2).

¶16          The State argues that when, as here, the record is devoid of any details regarding a witness's prior shoplifting conviction, the conviction might have rested on any of the five enumerated subsections. Because not all involve a dishonest act or false statement as contemplated by Rule 609(a)(2), the State reasons, courts properly preclude prior shoplifting convictions for impeachment purposes. Winegardner responds that shoplifting, as codified in § 13-1805, is a unitary offense that may be

charged in the disjunctive, using "and/or" to allege conduct covered under any of the statute's subsections. Thus, any shoplifting conviction may involve a dishonest act or false statement, even if the indictment, jury instructions, or plea agreement do not list a specific subsection that itself indicates a dishonest act or false statement. Accordingly, Winegardner argues that shoplifting convictions should be per se admissible under the rule. The correct approach lies somewhere between these two all-or-nothing positions.

¶17 The shoplifting statute, § 13-1805, indicates that a conviction may or may not involve elements of dishonesty or false statement. Therefore, shoplifting is not like perjury or criminal fraud, which require the state to prove a dishonest act or false statement before a defendant can be convicted. Consequently, shoplifting is not a conviction that is per se admissible under Rule 609(a)(2). This conclusion comports with federal evidentiary law. *See, e.g.*, *United States v. Dunson*, 142 F.3d 1213, 1215 (10th Cir. 1998) (finding that shoplifting is not "'automatically' a crime involving 'dishonesty or false statement' within the meaning of Rule 609(a)(2)"); *United States v. Amaechi*, 991 F.2d 374, 379 (7th Cir. 1993) ("[W]e agree with nine other circuits that to include shoplifting as a crime of dishonesty would swallow the rule and allow any past crime to be admitted for impeachment purposes."); *Ortega*, 561 F.2d at 806 (finding that "[h]uman experience does not justify an inference that a person will perjure himself from proof that he was guilty of petty shoplifting" and the "expressed intent of the draftsmen of Rule 609 [was to] limit[] the 'dishonesty and false statement' language to those crimes that involve some element of misrepresentation or other indicium of a propensity to lie"). Because we agree with the reasoning of cases like *Amaechi* and *Ortega*, we reject the dissent's conclusion that shoplifting inherently involves a "dishonest act" for purposes of Rule 609(a)(2). *Infra* ¶¶ 30-32, 34.

¶18 Yet the statutory language shows that under certain circumstances a shoplifting conviction may evidence a witness's dishonest act or false statement for purposes of Rule 609(a)(2). Therefore, shoplifting is not like burglary, which is generally inadmissible because it involves no such statutory element. *See* A.R.S. § 13-1506; *see also Malloy*, 131 Ariz. at 128-29; *State v. Johnson*, 132 Ariz. 5, 8-9 (App. 1981). Instead, a trial court could properly admit those shoplifting convictions that, based on the record provided to the court, involve a dishonest act or false statement. Again, this conclusion is consistent with federal evidentiary law. For example, the

United States Court of Appeals for the District of Columbia Circuit concluded in *United States v. Dorsey* that "Rule 609(a)(2) applicability occurs only if the prior offense is 'characterized by an element of deceit or deliberate interference with [the] ascertainment of truth' . . . but [the rule] may be operative if [a party] can show that, although the prior crime was not characterized by an element of fraud or deceit, it nonetheless was committed by such means." 591 F.2d 922, 935 (D.C. Cir. 1978), *superseded on other grounds by statute as stated in United States v. Fennell*, 53 F.3d 1296 (D.C. Cir. 1995).

**¶19**　　　　Thus, even when the legal elements of an offense do not necessarily involve a dishonest act or false statement, a crime's factual basis may warrant admission of the conviction for impeachment purposes under Rule 609(a)(2). *See, e.g.*, *United States v. Estrada*, 430 F.3d 606, 614 (2d Cir. 2005) (stating that the Second Circuit "look[s] beyond the elements of the offense to determine whether the conviction rested upon facts establishing dishonesty or false statement" (internal quotation marks and citation omitted)); *United States v. Yeo*, 739 F.2d 385, 388 (8th Cir. 1984) (finding that "[s]everal courts have observed that although theft is not, of necessity, a crime of dishonesty or false statement, it may nevertheless be admissible under Rule 609(a)(2) if in fact the crime was committed by fraudulent or deceitful means"); *United States v. Smith*, 551 F.2d 348, 364 n.28 (D.C. Cir. 1976) (noting that "if a statutory petty larceny offense is committed not by stealth, but by fraudulent or deceitful means, e.g., taking by false pretenses, it may qualify as a crime involving dishonesty or false statement").

**¶20**　　　　In such cases, the party seeking admission of the prior conviction bears the burden of establishing the factual basis for its admission. *See id.* (noting that "automatic admissibility under Rule 609(a)(2) will normally not be permitted, unless [the party seeking admission] first demonstrates to the court, outside the jury's hearing, that a particular prior conviction rested on facts warranting the dishonesty or false statement description").

**¶21**　　　　Winegardner advocates for a more permissive approach to admitting impeachment evidence, noting that under the modern evidentiary rules, a discredited witness has the opportunity to rehabilitate, whereas under the common law, a prior conviction for crimen falsi resulted in the absolute disqualification of a witness. But Rule 609(a)(2)'s language counsels otherwise.　　Because the rule mandates the admission of

convictions involving a dishonest act or false statement and thus precludes a trial court from weighing a conviction's prejudicial effect, it should be narrowly construed. *See United States v. Fearwell*, 595 F.2d 771, 777 (D.C. Cir. 1978) (concluding that "precisely because it involves no discretion on the part of the trial court . . . Rule 609(a)(2) must be confined . . . to a 'narrow subset of crimes[,]' those that bear directly upon the accused's propensity to testify truthfully" (quoting *Smith*, 551 F.2d at 362)).

¶22 Likewise, the dissent argues that because some jurors might believe that a shoplifting conviction justifies an inference that a person will perjure himself in future proceedings, the conviction's mandatory admission is warranted under Rule 609(a)(2). *Infra* ¶ 34. But the admissibility of evidence is a question of law that is determined by court rules and judges, not jurors. *See, e.g.*, Ariz. R. Evid. 403; Ariz. R. Evid. 404; Ariz. R. Evid. 802. Indeed, the evidentiary rules strictly confine the admissibility of arguably material evidence that may be prejudicial. The jury's authority to weigh evidence only exists as to prior convictions that are admissible, and a judge does not encroach that authority by determining the admissibility of such a conviction. Given that Rule 609(a)(2) provides for mandatory admission of convictions and involves no judicial discretion under Rule 403, only those convictions that are inherently relevant to a witness's tendency to perjure himself are properly admitted under the rule.

¶23 Accordingly, we conclude that shoplifting does not necessarily involve a dishonest act or false statement for purposes of Rule 609(a)(2) and therefore is not automatically admissible under the rule.

## C.

¶24 Rule 609(a)(2) provides that admission of a conviction is only proper "if the court can *readily determine* that establishing the elements of the crime required proving - or the witness's admitting - a dishonest act or false statement." Ariz. R. Evid. 609(a)(2) (emphasis added). In most circumstances, the statutory elements of the offense will show whether a conviction required proving or admitting a dishonest act or false statement. However, in cases "[w]here the deceitful nature of the crime is not apparent from the statute and the face of the judgment . . . a proponent may offer information such as an indictment, a statement of admitted facts, or jury instructions" to demonstrate that the conviction rested on the defendant

admitting or the factfinder finding a dishonest act or false statement. Fed. R. Evid. 609 advisory committee's note to 2006 amendment. The rule does not permit, however, a "trial within a trial" delving into the factual circumstances of the conviction by scouring the record or calling witnesses.

¶25  Here, L.B.'s shoplifting conviction was not automatically admissible under Rule 609(a)(2), and Winegardner provided the trial court with no information showing that it involved a dishonest act or false statement. The trial court, although mistakenly considering the conviction's prejudicial effect, ultimately did not abuse its discretion when it precluded evidence regarding the conviction.

### III.

¶26  For the reasons stated, we vacate the opinion of the court of appeals and affirm Winegardner's conviction and sentence.

STATE v. WINEGARDNER
JUSTICE LOPEZ, joined by JUSTICES BOLICK and GOULD, Dissenting
in Part and Concurring in the Result

LOPEZ, J., joined by BOLICK, J. and GOULD, J., dissenting in part and concurring in the result:

**¶27** The majority holds that a shoplifting conviction is not automatically admissible under Rule 609(a)(2) because the crime "does not necessarily require the prosecution to prove 'a dishonest act or false statement' within the meaning of the rule." *Supra* ¶ 1. Consequently, such a conviction is not admissible for impeachment purposes unless the court can readily determine that it involved "a dishonest act" as narrowly construed under the Rule. *Supra* ¶ 1. I respectfully disagree and would instead hold that shoplifting, as codified in A.R.S. § 13-1805(A), should be automatically admissible because it clearly qualifies as a "dishonest act" under Rule 609(a)(2).

**¶28** I do not contest the majority's analytical framework, as it is familiar terrain. The majority correctly notes that Arizona Rule 609 mirrors its federal counterpart, Federal Rule of Evidence 609, *supra* ¶ 8, that we look to the federal approach for guidance, and that the federal rule's legislative history and its interpretation by federal courts support its holding, *supra* ¶¶ 9, 17. I disagree, however, that the federal guidance compels the majority's narrow interpretation and application of Rule 609(a)(2)'s definition of "a dishonest act." Although we consult the federal approach for guidance, we are not bound to federal courts' interpretations of the Federal Rules of Evidence when considering similar provisions in the Arizona Rules. *State v. Bible*, 175 Ariz. 549, 580 (1993) ("[W]e are not bound by the United States Supreme Court's non-constitutional construction of the Federal Rules of Evidence when we construe the Arizona Rules of Evidence."). Because I find the federal authorities' application of the Rule artificially and unjustifiably constrained, I would decline to follow it here.

**¶29** The plain language of the relevant part of Rule 609(a)(2) renders a conviction admissible if it involves "a dishonest act." As the majority notes, a federal conference committee limited "a dishonest act" to crimes "which involve[] some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully." *Supra* ¶ 10. In *State v. Malloy*, we adopted the conference committee's definition of "dishonest act" and held that "the phrase 'dishonesty or false statement' should be construed narrowly to include only those crimes involving some element of deceit, untruthfulness, or falsification." 131

11

STATE v. WINEGARDNER
JUSTICE LOPEZ, joined by JUSTICES BOLICK and GOULD, Dissenting
in Part and Concurring in the Result

Ariz. 125, 127 (1981). In doing so, we glossed over the Rule's plain language to find a much narrower meaning in its legislative history. But our decisions repeatedly emphasize that we should apply plain meaning before resorting to secondary interpretation methods such as legislative history. *See, e.g.*, *State v. Christian*, 205 Ariz. 64, 66 ¶ 6 (2003) ("[T]he best and most reliable index of a statute's meaning is the plain text of the statute."). A "'dishonest' act" is one that is "[d]ishonorable," "[c]haracterized by fraud," or "[w]anting in honesty or integrity." *See Dishonest*, Webster's Second New International Dictionary 748 (1949). The majority tacitly concedes that shoplifting is a dishonest act under a plain meaning interpretation of the rule by acknowledging that shoplifting "is dishonest in layman's terms." *Supra* ¶ 15. Shoplifting is a "dishonest act" within the plain meaning of the phrase, and by the Rule's terms, "deceit, untruthfulness, or falsification" are not necessary prerequisites to its application.

**¶30**　　　　We must apply the Rule, of course, to the specific statutory language that Arizona uses to define shoplifting. Even under the federal authorities' narrow definition of "dishonest act," adopted by *Malloy*, shoplifting remains admissible under Rule 609(a)(2) because its commission necessarily involves an element of "deceit." The majority concedes that subsections (2), (3), and (4) of A.R.S. § 13-1805(A) "might implicate dishonesty and false statement," but concludes that subsections (1) and (5) do "not necessarily establish a trait of untruthfulness" sufficient for admissibility under Rule 609(a)(2). *Supra* ¶ 15. I disagree with the majority's conclusion that subsections (1) and (5) do not necessarily establish a trait of untruthfulness. Instead, I would find that those sections qualify under the Rule because they, too, inherently involve deceit.

**¶31**　　　　Subsection (5) requires knowingly obtaining goods belonging to another by "[c]oncealment." A.R.S. § 13-1805(A)(5). "Concealment" is defined as the "practice or fact of concealing what ought to be revealed; improper secrecy." *See Concealment*, Webster's Second New International Dictionary 552 (1949). Shoplifting by "concealment" plainly connotes "deceit" because the shoplifter removes a storekeeper's property by exiting the store while improperly hiding an unpurchased item. This is the essence of deceit.

**¶32**　　　　Subsection (1) presents a closer call. That provision defines shoplifting as "[r]emoving . . . the goods . . . without paying the purchase

STATE v. WINEGARDNER
JUSTICE LOPEZ, joined by JUSTICES BOLICK and GOULD, Dissenting
in Part and Concurring in the Result

price." A.R.S. § 13-1805(A)(1). The State argues that various methods of shoplifting covered by subsection (1) do not involve deceit, such as brazenly stealing a case of beer while under the watchful eye of employees or eating grapes throughout the grocery store while shopping. But the State and the majority ignore the fact that shoppers have only a limited license to enter a store and it is premised on the understanding that the shopper will take merchandise only after he purchases it. *See Wright v. State*, 549 S.W.2d 682, 684–85 (Tenn. 1977) (recognizing a storekeeper's implied consent to members of the public entering the premises to inspect and purchase merchandise but noting that "[t]he instant one determines to purloin the property the conversion is complete and trespass has occurred"); Thomas M. Cooley, *A Treatise on the Law of Torts or the Wrongs Which Arise Independently of Contract* 322 (students' ed. 1907) (explaining that "[e]very retail dealer impliedly invites the public to enter his shop for the examination of his goods, that they may purchase them if they see fit" but that "the invitation is limited by the purpose" and a trespass occurs if one abuses the implied license). A shoplifter violates this license when he deceives a shopkeeper of his true purpose to knowingly remove property from the store without paying for it. *See Wright*, 549 S.W.2d at 684–85. As the majority notes, this distinguishes shoplifting from burglary, which "primarily involve[s] stealth," and robbery, which involves force. *Supra* ¶ 12; *cf. State v. Robertson*, 128 Ariz. 145, 146–47 (App. 1980) (distinguishing theft from shoplifting because the latter involves theft of merchandise displayed for sale in a business establishment). The fact that shoplifters, while plying their trade, may violate the shoplifting statute by employing varying degrees of deception toward shopkeepers does not alter shoplifting's fundamentally deceptive nature.

¶33 Other jurisdictions have declined to follow the federal courts' narrow definition of "a dishonest act" and have held that shoplifting convictions are admissible under their respective versions of Rule 609. *See, e.g., State v. Brown*, 782 P.2d 1013, 1030–31 (Wash. 1989) (holding that Washington Rule of Evidence 609, which mirrors the federal rule, encompasses shoplifting as "[t]he act of taking property is positively dishonest"); *see also State v. Melendrez*, 572 P.2d 1267, 1269 (N.M. Ct. App. 1977) (holding that shoplifting involves dishonesty or false statement); *State v. Gallant*, 764 P.2d 920, 922–23 (Or. 1988) (holding that second-degree theft by shoplifting is a crime involving dishonesty). These cases properly reject Federal Rule 609 precedent concerning shoplifting convictions, and we

STATE v. WINEGARDNER
JUSTICE LOPEZ, joined by JUSTICES BOLICK and GOULD, Dissenting
in Part and Concurring in the Result

should follow suit.  This position does not disturb *Malloy*, which merely held that a misdemeanor burglary conviction "does not necessarily involve an element of deceit or falsification and, consequently, is not admissible under Rule 609(a)(2)."  131 Ariz. at 128.  Shoplifting is distinguishable from burglary, robbery, and other forms of theft because it necessarily involves deception.

**¶34**      Because shoplifting qualifies as a dishonest act, it is admissible as a matter of law under Rule 609(a)(2).  We should decline to follow the federal authorities' interpretation of Rule 609(a)(2) because it unnaturally narrows the meaning of "a dishonest act."  This narrowing is not without consequence: by rendering some shoplifting convictions inadmissible for impeachment purposes, it needlessly curtails the factfinder's ability to determine the impeachment value, or weight, of a witness's shoplifting conviction.  The majority reasons that "[a]lthough purposefully leaving a store with an item without paying for it *is dishonest in layman's terms*, it does not meet Rule 609(a)(2)'s threshold of establishing a trait for untruthfulness."  *Supra* ¶ 15 (emphasis added).  The majority, like the court of appeals, invokes *Ortega*'s oft-cited proclamation that "[h]uman experience does not justify an inference that a person will perjure himself from proof that he was guilty of petty shoplifting," to support its legal conclusion concerning a shoplifting conviction's admissibility.  *Supra* ¶ 17.  But *Ortega* supplants the common experience of judges for that of jurors (as laymen) under the guise of "human experience" to bolster its legal conclusion.  While it may be the experience of *some* judges that a demonstrably dishonest person, namely a shoplifter, is not more likely to lie under oath than an honest person, we cannot know whether jurors share this counterintuitive proposition.  What "human experience" tells us about a witness's shoplifting conviction is better suited for a judgment about the conviction's weight, in context, than its categorical admissibility.  *See State v. Fischer*, 242 Ariz. 44, 50 ¶ 19 (2017) ("It is primarily the province of the jury to determine the credibility of witnesses and to find the facts.").

**¶35**      Despite the considerable value of conforming Arizona's evidentiary rules to the federal rules, *supra* ¶ 8, which I acknowledge, we retain the prerogative to determine the scope of *our* rule.  The federal approach loses itself in its hyper-technicality and subtly chips away at the truth-seeking purpose of our evidentiary rules.  *See* Ariz. R. Evid. 102 (explaining the purpose of Arizona Rules of Evidence as the fair and

STATE v. WINEGARDNER
JUSTICE LOPEZ, joined by JUSTICES BOLICK and GOULD, Dissenting
in Part and Concurring in the Result

efficient "development of evidence law, to the end of ascertaining the truth and securing a just determination"). Although the majority quotes Justice Frankfurter's observation that "if a word is obviously transplanted from another legal source . . . it brings the old soil with it," *supra* ¶ 9, in this unique context of interpreting our own rule we are free to shake the old soil loose to give the words "dishonest act" truer purchase. In a close admissibility case like this one, I respectfully submit that the better approach is to allow jurors to determine, under the unique circumstances of each case, the weight of a witness's shoplifting conviction.

¶36 From a practical standpoint, the majority endeavors to streamline its case-by-case approach for admissibility of shoplifting convictions under Rule 609(a)(2) and cautions that the "rule does not permit . . . a 'trial within a trial' delving into the factual circumstances of the conviction by scouring the record or calling witnesses." *Supra* ¶ 24. This may prove easier said than done. Inevitably, the majority's approach will result in additional or prolonged contested trial court hearings for no meaningful purpose. A per se rule of admissibility would be a more efficient approach. *See* Ariz. R. Evid. 102 ("These rules should be construed so as to administer every proceeding fairly, [and to] eliminate unjustifiable expense and delay . . . .").

¶37 Because I would find that a shoplifting conviction is automatically admissible under Rule 609(a)(2), I would vacate the court of appeals' opinion. I would, however, affirm Winegardner's conviction because the trial court's error in refusing to admit L.B.'s shoplifting conviction for impeachment purposes was harmless beyond a reasonable doubt. *See State v. Valverde*, 220 Ariz. 582, 585 ¶ 11 (2009) ("A reviewing court will affirm a conviction despite the error if it is harmless, that is, if the state, in light of all the evidence, can establish beyond a reasonable doubt that the error did not contribute to or affect the verdict." (internal quotation marks omitted)). Considering the overwhelming evidence of Winegardner's guilt, including DNA evidence and L.B.'s impeachment by her inconsistent testimony, any impeachment value of L.B.'s misdemeanor shoplifting conviction would not have affected the jury's verdict.